**BROWN & ROOT, INC., Appellant,**

v.

**BIG ROCK CORPORATION et al.,**
**Appellees.**

**No. 22895.**

United States Court of Appeals
Fifth Circuit.

Sept. 12, 1967.

Nauman S. Scott, Alexandria, La., William A. Brown, Houston, Tex., for appellant.

William E. Skye, Alexandria, La., J. B. Willis, St. Martinville, La., for appellees.

Before JONES and COLEMAN, Circuit Judges, and HEEBE, District Judge.

JONES, Circuit Judge.

This litigation, begun in 1961, has been around quite a long time. It had its origin in a contract between the appellant, Brown & Root, Inc., a Texas corporation, and the United States for the construction by Brown & Root of locks upon the Mississippi River, referred to as the Old River Navigation Locks or as the Old River Project. Some of the appellees had made bids for supplying Brown & Root with concrete aggregate, or had participated in one way or another in supplying or agreeing to supply aggregate for the project. Those who undertook to supply the aggregate were unable

to get Government approval for one of the types of gravel resulting in the financial collapse of the supplier and the necessity of Brown & Root to go elsewhere for aggregate and to pay a higher price. Brown & Root, by its original complaint, sought judgment against some of the defendants for breach of contract in failing to deliver aggregate and claiming as damages the difference between the contract price and the actual cost. The complaint charged the defendants with an anti-trust conspiracy and monopoly in fixing the price of aggregate above the cost under competitive conditions. Other issues were interjected by interpleaders and counterclaims. One phase of the case was disposed of by a decision of this Court. Brown & Root, Inc. v. Gifford-Hill & Company, 5th Cir. 1963, 319 F.2d 65. Other matters went out of the case by summary judgment, orders of court and dismissals. One of the counterclaims was filed by O. R. Stephens asserting that the anti-trust claim against him was false, malicious and made without probable cause and seeking balm in the amount of $75,000. Brown & Root filed an amended complaint in which it adopted the allegations of its original complaint and by which it asserted, as an alternative cause of action, the conclusionary averment that if it is not entitled to the relief originally sought, it should be given a declaratory judgment that it had good cause for instituting the action, that it was instituted and prosecuted in good faith and that it is not liable to any of the defendants for damages resulting from the institution and prosecution of the suit.

Prior to the trial counsel for Brown & Root wrote to the district judge saying that it did not care to prosecute its anti-trust claim unless it was necessary to do so to provide a defense to threatened malicious prosecution actions. An advanced trial of the declaratory judgment issue was requested. The judge replied saying that the "probable cause" question would be submitted to the jury by interrogatory along with other questions. Later there was a change of mind and the judge advised counsel that the "probable cause would not be submitted to the jury." The case was tried to a jury on the anti-trust and contract issues. The court disposed of the breach of contract claims by directing verdicts for Brown & Root and against the defendants Richard Coco, Lake Pearl Sand & Gravel Company, Inc., and Central Sand & Gravel, Inc., for $7,123.10 and against the defendants Richard Coco, Lake Pearl Sand & Gravel Company, Inc., and Big Rock Corporation for $100,000. The court directed verdicts on the contract claim against Brown & Root and for the other defendants. The court directed a verdict for one of the defendants on the anti-trust claim. Interrogatories were submitted to the jury as to each of the other defendants as to whether they and others conspired to monopolize or attempt to monopolize the sources of concrete aggregate available to Brown & Root for the Old River Project, or to dictate the price at which its aggregate requirements would be supplied. While the jury was out the court sent in a note asking whether it appeared that a verdict would be reached. An answer, signed by the foreman, said "I do not believe we are going to agree on a verdict." However, a verdict was reached, returning a negative answer to each interrogatory. Brown & Root filed a motion requesting that the court investigate possible jury misconduct. On motion of Stephens, his counterclaim for damages for malicious prosecution was dismissed as being premature.

The court, by an instrument styled "Memorandum Rulings on Post-Verdict Motions of Plaintiff," stated that the claim of Brown & Root for a declaratory judgment had not been litigated and was not a part of the anti-trust case although possibly ancillary to it. The court certified that there was no reason for delay of the entry of judgment on the anti-trust phase of the case. A money judgment was entered for Brown & Root on the contract claims in accordance with the directed verdicts. Judgment was entered against Brown & Root in accord-

ance with the special verdicts on the contract claims.

Brown & Root appealed, asserting the following seven specifications of error:

1. The trial court erred in refusing to declare probable cause existed for filing this suit.

2. The court erred in refusing to grant judgment for plaintiff on the anti-trust claim.

3. The court erred in rejecting appellant's contract claim against the individuals as joint venturers.

4. The court erred in excluding admissible evidence.

5. The court erred in the charge to the jury.

6. Defendants' jury argument was inflammatory, prejudicial and improper.

7. The court erred in preventing investigation of possible jury misconduct.

The appellant, Brown & Root, by brief and oral argument disclaims any desire for recovery of a money judgment and avows that its only desire is to procure a declaratory judgment that will protect it against liability for malicious prosecution to those against whom it asserted the anti-trust claim.

■■ It is clearly apparent that the district court, in deciding the contract claims and the anti-trust claim, and withholding its decision in the probable cause issue was intending to make a final adjudication of two of the three claims for relief asserted by Brown & Root. Fed. Rules Civ.Proc. 54(b). We think this was the result of the district court's action and that there was no final and appealable judgment or order on the probable cause issue. Although we decide that there is no jurisdiction in this Court to consider the first of the assignments of error because of the absence of an appealable judgment, nevertheless we are constrained to observe that there is another fatal defect which prevents our consideration of the question. Declaratory judgments may be sought "in cases of actual controversy." 28 U.S.C.A. § 2201. No cause of action for malicious prosecution comes into existence until the termination of the particular judicial proceeding which is the gravamen of the malicious prosecution action. Guerra v. Gonzalez, 5th Cir. 1965, 340 F.2d 227; Bass v. Commercial Credit Corporation, 5th Cir. 1963, 317 F.2d 910; Dickey v. Kaiser Aluminum & Chemical Sales, Inc., 5th Cir. 1960, 286 F.2d 137; Muldrow v. Jones, La.App., 85 So.2d 711; Scott v. Citizens' Hardware & Furniture Co., 180 La. 473, 156 So. 469.

■■ Where the Declaratory Judgments Act is invoked the same jurisdictional requirements as to a case or controversy must be met as in other suits. Altvater v. Freeman, 319 U.S. 359, 63 S.Ct. 1115, 87 L.Ed. 1450. No cause of action against Brown & Root for malicious prosecution, having its antitrust claim as a basis, arose upon the filing of its complaint. There could be no judicial determination that a valid defense existed to a non-existent cause of action. A controversy, to be justiciable, must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop. Pertinent here is this statement of the Supreme Court:

"The Declaratory Judgment Act must be deemed to fall within this ambit of congressional power, so far as it authorizes relief which is consonant with the exercise of the judicial function in the determination of controversies to which under the Constitution the judicial power extends.

"A 'controversy' in this sense must be one that is appropriate for judicial determination.

* * * A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. * * * The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. * * *

It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Aetna Life Insurance Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240–241, 57 S.Ct. 461, 464, 81 L.Ed. 617, 621. See Wacker v. Bisson, 5th Cir. 1965, 348 F.2d 602.

■ Also applicable is this statement of the rule as announced by this Court:

"But it is not the function of a United States District Court to sit in judgment on these nice and intriguing questions which today may readily be imagined, but may never in fact come to pass. The mandatory obligation of a District Court to accept and determine a suit for declaratory relief is not commensurate with the full scope of a 'case or controversy' within the constitutional sense." American Fidelity & Casualty Co. v. Pennsylvania T. & F. M. Casualty Insurance Co., 5th Cir. 1960, 280 F.2d 453, 461.

■ We are urged by Brown & Root to decide the probable cause question because, if it be decided that probable cause existed, the long and complex litigation would come to an end and this Court would be relieved of the burden of considering the other phases of the appeal. We are reminded by counsel of the statement of the trial judge that:

"If I were passing on it, very frankly, I would be inclined to believe that under the total circumstances, they were justified in doing what they did, but that's another day.

"All right—I am talking about Brown & Root justified. There was a big mix-up as far as I could see and they actually were trying to protect their people, but that's another case for another day, when and if it is a case three or four years from now."

These comments, if meaningful at all, will perhaps have meaning on that "another day," if and when that other day comes. At the same time it will no doubt be remembered, if the remembrance be of any avail, that the trial judge permitted the anti-trust issue to go to the jury while deciding the contract claim as a matter of law. So too, it may then be recalled that the jury deliberated long and at one time seemed unable to agree. But as was said, these are matters for another day. Counsel for the appellees join in urging that this Court decide the probable cause issue. However desirable such a decision may be to the parties, and however much the Court may sympathize with their desires, it is fundamental that the question of Federal jurisdiction is always present and if there be no jurisdiction the courts must decline to act. Proceedings under the Declaratory Judgments Act are subject to this rule. Connecticut Indemnity Co. v. Lee, 1st Cir. 1948, 168 F.2d 420. It was error, and plain error which this Court must notice, to permit Brown & Root to file its amended complaint. Nothing here said or decided will prevent a judicial determination of the probable cause issue at an appropriate time and in a proper proceeding.

■ Brown & Root contends that there should be a reversal of the judgment because of the inflammatory, prejudicial and improper argument to the jury by counsel for some of the defendants. We agree that the argument was improper and under some circumstances would require reversal. Counsel appealed to the sympathy and sectional prejudices of the jury; he referred to the bigness and wealth of Brown & Root; he referred to it and its counsel in unjustified terms of abuse and derogation; all of which was improper and inexcusable. Crowell-Collier Publishing Co. v. Caldwell, 5th Cir. 1948, 170 F.2d 941; Washington Annapolis Hotel Co. v. Riddle, 1948, 83 U.S. App.D.C. 288, 171 F.2d 732; Missouri-Kansas-Texas Railroad Co. of Texas v. Ridgway, 8th Cir. 1951, 191 F.2d 363, 29 A.L.R.2d 984. But during the entire argument which is criticized by Brown & Root no objection was interposed, no request was made for intervention by the court, no suggestion was made that coun-

sel be admonished, no instruction was sought that the jury disregard the improper remarks, and no motion for a mistrial was made. We do not think that, under the circumstances, the error was so highly prejudicial as to require a reversal when it was first mentioned by Brown & Root after an adverse verdict in its motion to investigate jury misconduct, and its first effort to be relieved of the claimed prejudice was by its motion for a new trial. There was, we think, a waiver of the misconduct. See 88 C.J.S. Trial § 196, p. 382 et seq. It may be observed that counsel whose jury argument was beyond the bounds of propriety did not represent any of the parties who are before us on appeal and Brown & Root has settled with some or all of the parties represented by him.

 It is urged by Brown & Root that the trial court committed error in not granting its motion to investigate jury misconduct, and that an investigation should have been made or permitted. There was nothing to indicate any jury misconduct. Suspicion and conjecture, without more, and no more was here shown, do not require any investigation of wrongdoing in the jury room.

The other assignments of error of the appellant, Brown & Root, have been considered. Our careful review of the extensive record leaves us fully convinced that no prejudicial error was committed. No useful purpose would be served by a further extension of this opinion to discuss the other questions which the appellant has raised.

Brown & Root filed in this Court a motion for the entry of a judgment against Central Sand and Gravel Company. It appears that this defendant is a bankrupt. The trustee in bankruptcy did not participate in the district court litigation. He has not participated in the appeal except to oppose the granting of the motion. The motion was carried with the case. The disposition of the case disposes of the motion.

The judgment of the district court is

Affirmed.