435 So.2d 1219 (1983)
SAFECO INSURANCE COMPANY OF AMERICA
v.
Betty Vines SIMS, et al.
81-555.
Supreme Court of Alabama.
June 3, 1983.
Rehearing Denied August 5, 1983.
*1220 Charles A. Stewart, Jr. and Frank E. Lankford, Jr. of Huie, Fernambucq, Stewart & Smith, Birmingham, for appellant.
Frank O. Burge, Jr. of Burge & Florie, Birmingham, for appellee.
FAULKNER, Justice.
This is an appeal from a judgment in favor of William E. Sims in the amount of $30,000.00, and in favor of Betty V. Sims in the amount of $75,000.00, against Safeco Insurance Company of America (Safeco) in a bad faith tort action. We reverse and render on the ground that the insureds' failure to file a counterclaim in a prior declaratory judgment action bars the instant tort claim for bad faith.
Safeco issued a policy of automobile insurance to the Simses under a "budget plan" which allowed the insured to purchase six months of coverage with two separate premium payments. The first three months of coverage expired December 14, 1975, with renewal premium for the second three months being due in November 1975.
Because of problems involving a bad check written by the Simses there was some difficulty in Safeco's internal processing procedure and the premium notice was not mailed to the Simses prior to renewal date. This was evidenced by a letter from L. Trayser of Safeco Insurance Company to the Simses. The letter advised them that the policy would remain in full force and effect if "your payment is postmarked no later than December 26, 1975. If payment is not postmarked by this date, however, coverage will terminate as of renewal due date on the attached notice."
Betty Sims had an accident on December 26, 1975. As of that date her Safeco liability premium had not been paid. She called the agent, Jinks, about the accident; but whether the call was made before or after midnight was disputed at trial.
The letter in which the Simses mailed the premium which was due on December 26, was postmarked December 27. Even though the check was late, Safeco accepted it and reinstated the insurance policy to provide coverage prospectivelynot to include the date of the accident. On January 27, 1976, Safeco advised the Simses by letter that there would be no coverage for the loss of December 26th because of non-payment of premiums.
Safeco filed in the Circuit Court of Jefferson County a complaint for declaratory judgment which was served upon the Simses on May 27, 1976. The complaint asked the court to determine that coverage had lapsed; was not in effect at the time of the accident; and that Safeco, therefore, had no obligation under the policy for any loss or damage arising out of the December 26 accident.
Following an evidentiary hearing on November 16, 1976, the court ruled that coverage was afforded the Simses under the doctrine *1221 of waiver and estoppel. The court stated:
"This cause presents a justiciable controversy...."
". . .
"Under the attendant facts as set forth in the trial of this cause, this Court finds that the acceptance by Safeco of the policy premium after the aforesaid loss occurred does constitute a waiver of the delinquency in payment and amounted to an intentional relinquishment of any right which Safeco might have had to the denial of coverage under its policy. The facts of this instant case are very similar, in the salient factors, to the case of Alabama Farm Bureau Mutual Casualty Insurance Co., Inc. v. Hicks, 133 So.2d 221, 272 Ala. 574, to the case of State Farm Mutual Automobile Insurance Co., a corporation v. Martin N. Anderson, cited as [294 Ala. 451] 318 So.2d 687, and these cases and allied cases of our Supreme Court are the authority for this instant decision."
On November 14, 1977, the Simses filed a complaint against Safeco and its authorized agent, Jinks. The complaint alleged that on December 26, 1975, they had liability insurance coverage with Safeco, and that on that date, Betty Sims suffered an automobile accident which resulted in liability claims being made against her. The complaint further alleged that Safeco denied payment of the claims and filed a declaratory judgment action in the Circuit Court of Jefferson County, Alabama, which resulted in a decree dated November 16, 1976, holding that the Simses were in fact covered under the Safeco liability insurance policy. They alleged that Safeco's actions in denying coverage constituted bad faith and breach of contract. As a proximate result of defendants' alleged bad faith and breach of contract, the plaintiffs claim that they were caused to suffer severe and permanent injury, including mental and emotional injury, for which compensatory damages of $500,000 and punitive damages of $3,000,000 were sought. The complaint was amended to include an additional cause of action in fraud.
The defendants, Safeco and Jinks, filed an answer to plaintiffs' complaint on February 11, 1978, and amended the same on November 9, 1978, claiming as defenses the statute of limitations, the doctrine of estoppel because of the plaintiffs' failure to file a counterclaim in the declaratory judgment action, the general issue, and that the defendant Safeco had exhausted the limits of its liability coverage with plaintiffs and had settled and obtained on behalf of the insured full and complete general releases from all parties injured in the automobile accident. On November 12, 1978, defendants filed a motion to dismiss or a motion for summary judgment based upon the plaintiffs' failure to assert a compulsory counterclaim in the declaratory suit; the defense of res judicata; and the defense of the one-year statute of limitations. The court reserved ruling on the defendants' motion to dismiss until the day of trial.
At the conclusion of the plaintiffs' case and at the conclusion of all the evidence, Safeco and Jinks argued a motion for directed verdict. The court overruled the motion on behalf of Safeco, but granted the motion as to defendant Jinks at the close of all the evidence.
The case was submitted to the jury against defendant Safeco for the tort of bad faith. The jury returned a verdict in favor of Mr. Sims in the amount of $30,000 and a verdict in favor of Mrs. Sims in the amount of $75,000. The court rendered judgment on the jury verdict on November 25, 1981.
Safeco presents these principal issues on appeal:
(1) Whether the bad faith action is barred by the compulsory counterclaim mandate of ARCP 13(a), and
(2) Whether the trial court's finding of a justiciable controversy in the declaratory judgment action bars this action.

I
We address the issue of whether the tort of bad faith claim was a compulsory counterclaim *1222 in the declaratory judgment suit, thus barring the instant action. Rule 13(a), ARCP, states in pertinent part:
"A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."
The Committee Comments elaborate:
"Though any claim against an opposing party may be presented as a counterclaim, the rule also provides that such a claim must be pleaded as a counterclaim if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim. Rule 13(a). The purpose of this provision is to avoid circuity of actions, and to require assertion as counterclaims of those claims which are likely to turn on the same facts as the original claim. A counterclaim is compulsory if there is any logical relation of any sort between the original claim and the counterclaim. [Citations omitted.] If the pleader neglects to assert a compulsory counterclaim, the court can grant leave to amend the pleadings to raise it. Rule 13(f); and see also Rule 60(b)(1). But if it is not asserted, it cannot thereafter be sued on in another action."
The ex contractu claimfor the insurer's default on the policyand the ex delicto claimfor the insurer's tortious misconduct in such defaultarise out of the same transaction. And, it is obvious that the instant claim does not fall within any of the exceptions enumerated in subsection (a) of Rule 13.
We know of no reason that ARCP 13(a) is not applicable to declaratory judgment actions. The very essence of that prior suit was the adjudication of the rights of the parties with respect to the insurance coverage. The declaratory judgment action was no different from any other proceeding seeking to litigate that issue. The only possible objection to the application of Rule 13 to the situation at hand would be uncertainty of the accrual of the bad faith claim at the time of the filing or pendency of the declaratory judgment suit; but that determination is to be made as in any other case. Certainly, the mandate for compulsory counterclaims is not triggered as to causes of action unaccrued at the time of the adjudication of the insurer's initial action. Indeed, the words "any claim which ... the pleader has" contemplates as much.
The question, then, is did the insureds have a cause of action for bad faith (i.e., had the tort of bad faith claim accrued) at the time of the filing or pendency of the declaratory judgment suit?
The insureds were fully aware of all the material facts constituting the insurer's breach of its contractual obligation to afford liability coverage. Those same facts form the basis for the insured's tort of bad faith claim.
The cause of action for bad faith refusal to honor insurance benefits accrues upon the event of the bad faith refusal, or upon the knowledge of facts which would reasonably lead the insured to a discovery of the bad faith refusal. Dumas v. Southern Guaranty Insurance Co., 408 So.2d 86 (Ala.1981). The accrual of the tort of bad faith cause of action is a question of fact to be determined by the circumstances of each case. Here, those facts are without dispute, compelling the conclusion that the bad faith claim had accrued at a time within the compulsory counterclaim mandate of Rule 13(a).

II
We address the issue of justiciable controversy not because it has any bearing on the result of this case, but because of the following language in Chavers v. National Security Fire & Casualty Co., 405 So.2d 1 (Ala.1981), which may be misunderstood by bench and bar.
"Alternatively, the insurer may file a declaratory judgment action; and if the pleadings and proof justify an adjudication of the existence of a justiciable controversy *1223 as to the legal basis for refusal of payment issueallowing the court to entertain that action whether or not the insurer prevails on the insurance contract claimsuch an adjudication would also establish a valid reason for its refusal to pay, thus avoiding liability on the bad faith tort claim."
Safeco argued that the court's finding in the declaratory judgment action of the existence of a "justiciable controversy" as a matter of law barred the bad faith action because of this language. On the other hand, the Simses argued that the finding of a justiciable controversy in the declaratory judgment action is no more than a finding that an issue was made up by Safeco's unjustified denial of coverage. Moreover, they argued that the finding of a justiciable controversy in no way reflects any merit in Safeco's denial of coverage and should not be a defense to their suits for bad faith.
If we accept Safeco's arguments, the finding of a justiciable controversy would bar a bad faith claim. If none was found, there would be a bad faith claim. We do not believe that either the insurer or the insured would want to speculate on the result of a declaratory action, to defend or to bring a bad faith claim. Moreover, if Safeco's argument were valid, there would be a race to the courthouse to file a declaratory action if the insurer denied the insured's claim.
We are of the opinion that the finding of a justiciable controversy is not the determining factor of whether there was or was not bad faith on the part of an insurance company to pay a claim. The standard for testing a bad faith claim is not found in either the adjudication of a justiciable controversy or the judgment on the merits of the contract claim.
We conclude by stating that whether there is a bad faith claim will be determined by the facts and circumstances of each case.

III
We pretermit discussion of the statute of limitations issue because of our holding that the Simses' failure to file a counterclaim barred the instant tort claim for bad faith. Therefore, the statute of limitations issue is moot.
REVERSED AND RENDERED.
TORBERT, C.J., and MADDOX, ALMON, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
JONES, J., concurs specially.
JONES, Justice (concurring specially).
I concur with the opinion of the Court on each of the issues addressed. Because of its posture and factual context, this case furnishes an excellent vehicle for the evolutionary development of the law of bad faith in this State, and I write specially in order to extend the discussion in two areas: 1) the relationship of declaratory judgment actions to the "directed verdict on the contract claim" test for bad faith; and 2) certain consequences of a declaratory judgment action upon compulsory counterclaims for bad faith.
In support of its contention that the declaratory court's finding of the existence of a "justiciable controversy" as a matter of law bars this bad faith action, Safeco cites the following language in Chavers v. National Security Fire & Casualty Co., 405 So.2d 1, 10 (Ala.1981):
"Alternatively, the insurer may file a declaratory judgment action; and if the pleadings and proof justify an adjudication of the existence of a justiciable controversy as to the legal basis for refusal of payment issueallowing the court to entertain that action whether or not the insurer prevails on the insurance contract claimsuch an adjudication would also establish a valid reason for its refusal to pay, thus avoiding liability on the bad faith tort claim." 405 So.2d 10.
On the other hand, the Simses contend that the quoted language of the majority in Chavers is dicta. They submit: "(1) Such dicta indicates a misunderstanding of the term `justiciable controversy' as it is used in *1224 declaratory judgment actions and (2) Such dicta should not be invoked to protect an insurance company whose bad faith produced the sham, i.e., the very declaratory judgment action where the justiciable controversy was found."
To support their first argument, the Simses quote the following language in Brown & Root, Inc. v. Big Rock Corp., 383 F.2d 662 (5th Cir.1967):
"Where the Declaratory Judgments Act is invoked the same jurisdictional requirements as to a case or controversy must be met as in other suits.... A controversy, to be justiciable, must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop. Pertinent here is this statement of the Supreme Court:
"`. . . .
"`A "controversy" in this sense must be one that is appropriate for judicial determination.
"`* * * A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. * * * The controversy must be definite and concrete, touching the legal relations or parties having adverse legal interests. * * * It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' Aetna Life Insurance Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240-241, 57 S.Ct. 461, 464, 81 L.Ed. 617, 621. See Wacker v. Bisson, 5th Cir.1965, 348 F.2d 602.'" 383 F.2d at 665-666.
The standard for testing a bad faith claim is to be found neither in the adjudication of a justiciable controversy, standing alone, nor in the judgment on the merits of the contract claim. This is not to say, of course, that either of these holdings is irrelevant to the bad faith issue. To be sure, the filing of a declaratory judgment action, under appropriate circumstances, may evidence a good faith attempt to seek a prompt resolution of a disputed claim. If, on the other hand, the refusal to pay is without legal excuse, the mere filing of a declaratory judgment action, followed by a finding of justiciable controversy, may enhance rather than diminish the degree of bad faith.
It must be said, also, that not only is a judgment on the merits relevant, but, in any claim seeking adjudication of the dispute, a resolution of the contract claim favorably to the insured is a requisite element of the tort of bad faith remedy.
The latest expression of this legal standard for testing a bad faith claim is found in National Sav. Life Ins. Co. v. Dutton, 419 So.2d 1357 (Ala.1982). After quoting at length from National Security Fire & Casualty Co. v. Bowen, 417 So.2d 179 (Ala.1982) (defining the "absence of a debatable reason to deny payment" rule, and detailing the plaintiff's burden of proof), Dutton formulates the following test:
"In the normal case in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim and, thus, entitled to recover on the contract claim as a matter of law. Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury." 419 So.2d 1362.
This "directed verdict on the contract claim" test is not to be read as requiring, in every case and under all circumstances, that the tort claim be barred unless the trial court has literally granted plaintiff's motion for a directed verdict on the contract. Indeed, the words "entitled to a directed verdict" so indicate. Rather, this test is intended as an objective standard by which to measure plaintiff's compliance with his burden of proving that defendant's denial of *1225 payment was without any reasonable basis either in fact or law; i.e., that defendant's defense to the contract claim is devoid of any triable issue of fact or reasonably arguable question of law.
Exceptions to the "directed verdict" rule will undoubtedly arise. Take the case where the insurer insists that its refusal of payment was grounded solely on a particular entry in a hospital record, and plaintiff denies the very existence of such an entry. Merely because the insurer may be able to withstand a directed verdict motionthe existence vel non of the record entry itself being an issue of factwould not, as a matter of law, bar the plaintiff's tort claim. This extreme example is to be distinguished from the more normal situation in which the factual dispute centers around the reasonable, but conflicting, inferences that may be drawn from a hospital record entry. If the entry in fact exists and one of the reasonable inferences of fact which may be drawn therefrom supports a legal basis for denial of the claim, Plaintiff would not be entitled to a directed verdict on the contract claim; thus, the claimant would be barred from proceeding with his tort of bad faith claim, even though the issue of fact may be resolved adversely to the insurer and the contract benefits awarded to the insured.
Because of its potential relevance, one additional exception to the "directed verdict" test is suggested: Take the case of the insurer whose refusal of payment is based solely upon a legal position with respect to the controlling principles of law and its application to the undisputed facts giving rise to the claim. While the insurer, under the guise of asserting a legitimate defense, could not be heard to take issue with clear, well settled, elementary principles of contract law, certainly the rule of reasonableness dictates a field of operation for a denial of benefits based upon arguable legal grounds which are fairly debatable, even though the trial judge may correctly reject such arguments and direct a verdict for the insured.
Thus, as we have seen, Dutton's use of the terms "In the normal case" and "Ordinarily" allows for exceptions to the "entitled to a directed verdict" test. In the first example, the insured may proceed with his bad faith claim even though he was not entitled to a directed verdict; and in the second example, the insurer would be entitled to a judgment on the tort claim even though the insured was entitled to a directed verdict on the contract claim. Certainly these rare exceptions will not be difficult to recognize, nor will the general rule, because of rare exceptions, be difficult to apply.
It may be helpful, for purposes of future cases, to apply the Dutton test to the case at hand. We can readily conclude that, in the declaratory judgment action, the insureds were entitled to a directed verdict on their contract claim. A detailed discussion of the controlling legal principles and their application to the undisputed facts are unnecessary. Suffice it to say, the insurer offered no evidence whatsoever to raise a factual issue as to any lawful reason for declining coverage under the policy of insurance. Not only did its employees, who handled or had any contact with the transaction in question, not testify at trial, but, as was disclosed in the trial of the instant case, none of them were even aware of the filing or pendency of the declaratory judgment action. Indeed, the bill seeking a declaration of noncoverage omitted each and every averment of fact, which, when supplied by undisputed evidence during trial, constituted the irrefutable legal conclusion of waiver as found by the trial judge.
We have observed earlier that the insurer's refusal to pay may be legitimately defended on any fairly debatable issue of law as well as fact; and this justifiable excuse for nonpayment obtains irrespective of its subsequent rejection by the court, the test being one of reasonableness.
Even under the most liberal application of the "reasonableness" standard, however, the insurance nonwaiver argument cannot be classified as fairly debatable. The law of waiver, as applied to the undisputed position of no coverage, is demonstrated by the *1226 case of Washington National Insurance Co. v. Scott, 231 Ala. 131, 164 So. 303 (1935):
"Probably there is no principle of insurance law more firmly settled, nor better grounded in justice and reason, that that an insurer, who receives and retains premiums, the very consideration for carrying the insurance risk, with knowledge of facts which, under stipulations for his benefit, would, in the absence of such knowledge, empower him to treat the policy as having never been in force, or as being no longer in force, will be held to have waived such stipulations. Waiver, strictly speaking, is a matter of intent. But, in such case, no proof of actual intent is required. Any other intent, in such case, would work a positive wrong or fraud on the insured. The law charges the insurer with the intent to waive under the doctrine of estoppel." 231 Ala. at 132, 164 So. 303.
It is undisputed that Safeco (1) received the premium; (2) knew of the loss; (3) knew the money was for a specific policy and was specifically designated to cover a particular "premium due" for a specified coverage; and (4) kept the premium and allocated it to a coverage other than designated by the insured without informing the insureds, and without giving them the option of accepting different coverage or requesting return of their money. To be sure, Safeco's own expert legal witness testified that the undisputed facts gave rise to a waiver of Safeco and coverage to the insureds under settled law, thus not justifying a declaratory judgment action.
It should be emphasized that a finding of bad faith based upon rejection of an insurer's legal argument should be reserved for extreme cases. The right of an insurer to deny a claim on any arguable legal issue is to be as zealously guarded as is its right to decline benefits on any debatable issue of fact, the test of reasonableness being the same. To be sure, reasonably arguable legal issues may well include a legitimate challenge to existing precedent (assuming, of course, that such challenge is promptly pursued, for example, in a declaratory judgment suit).
Notwithstanding the liberality of this test, the facts of the instant case fall outside the permissible extremes of any reasonably arguable legal issue. And this determination is made not on the initial denial of coverage by some lay employee in the claims department upon receipt of the late premium, but upon subsequent conduct of supervisory and policymaking employees whose actions effected the waiver and directed the litigation without any semblance of defense as to any viable issue of fact or law.
I agree that an accrued cause of action for bad faith failure to settle an insurance claim is a compulsory counterclaim in a declaratory judgment action filed by the insurer. Not only are the two claims relatedthe requisite of Rule 13they find their genesis, and essential premise, in the same actdiffering only in the degree of culpability.
Although the opinion of the Court has not specifically treated the statute of limitations issue in the instant case, having reversed on other grounds, the interplay between the period of limitations for bad faith claims and the compulsory counterclaim requisite of Rule 13(a) is worthy of comment: Once the insurer filed a declaratory judgment action, given the accrual of an alleged tort of bad faith claim, the statute of limitations issue is rendered moot; and this for the reason that a fraud claim arising out of the same transaction is clearly in the nature of recoupment and not subject to a statute of limitations defense. Campbell v. Regal Typewriter Company, Inc., 341 So.2d 120 (Ala.1976).