Date: _____ _____

**CAJUN ELECTRIC POWER COOPERATIVE, INC.**

v.

**GULF STATES UTILITIES COMPANY, INC.**

**Civ. A. No. 89–474–B.**

United States District Court, M.D. Louisiana.

June 7, 1990.

Robert E. Barkley, Jr., Sessions, Fishman, Rosenson, Boisfontaine, Nathan & Winn, Francis R. White, III, Michael Meunier, John Hite, III, New Orleans, La., F. Victor Hastings, Kenner, La., Robert C. McDiarmid and Margaret A. McGoldrick, Washington, D.C., for plaintiff.

Tom F. Phillips, Taylor, Porter, Brooks and Phillips, Fredrick R. Tulley, James L. Ellis, John H. Runnels, Kathleen C. Mason, Baton Rouge, La., for defendant.

## RULING ON GULF STATES UTILITIES COMPANY'S MOTION TO BRING IN RURAL ELECTRIFICATION ADMINISTRATION AS ADDITIONAL PLAINTIFF

POLOZOLA, District Judge.

The issue presented to the Court is whether the Rural Electrification Adminis-

tration ("REA") should be added as a party plaintiff to this action. The Court finds that the REA has not waived its sovereign immunity and is not an indispensable party to this litigation. Therefore, the motion of Gulf States Utilities Company, Inc. ("GSU") to bring in the REA as an additional party pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure is DENIED.

## I. Background

On August 28, 1979, Cajun Electric Power Cooperative, Inc. ("Cajun") and GSU entered into the "Joint Ownership Participation and Operating Agreement: River Bend Unit 1 Nuclear Plant" (the "JOA"). Through this agreement, Cajun and GSU share ownership of the River Bend Unit 1 Nuclear Power Plant with undivided interest of 30% and 70% respectively.

Cajun filed this suit seeking "to annul, rescind, terminate and/or dissolve the JOA *ab initio*" because of (1) "fraud and error which vitiated Cajun's consent to the contract"; (2) "lack or failure of cause and/or consideration"; (3) GSU's breach of fiduciary duties; and/or (4) "GSU's repudiation, renunciation, abandonment, or dissolution of its core obligations under the JOA".[1] Cajun also seeks to recover its entire $1.6 billion investment in the plant.

The JOA was conditioned on Cajun obtaining financing through the REA. The REA did extensive research, investigations, and analyses of the River Bend project in order to determine whether to finance Cajun's interest in the plant under the JOA. The REA also became involved in some of the negotiations. Thereafter, Cajun obtained financing through the REA in the form of direct loans and loans from other lenders guarantied by the REA ("REA Lenders"). As security for these loans, mortgages were obtained on Cajun's 30% interest in the plant facilities, nuclear fuel associated with the plant, buildings at River Bend, and the JOA itself.

Cajun is now involved in negotiating and implementing a workout plan with the REA concerning these debts and other debts owed to the REA lenders which total over $4 billion. Pursuant to this workout plan, a memorandum of understanding was entered into between Cajun and the REA in which Cajun agreed to apply any proceeds received from litigation such as this suit to its outstanding debt owed to the REA lenders.

After Cajun filed its suit, GSU filed a motion under Rule 12(b)(7) of the Federal Rules of Civil Procedure to join the REA as a plaintiff in this action. GSU contends that the REA is a "person to be joined if feasible" under Rule 19(a) of the Federal Rules of Civil Procedure. GSU argues that the REA should be added as a party to this suit because of: (1) the REA's role in financing Cajun's interest in the plant; (2) the mortgages held by the REA lenders; and, (3) the repayment of portions of the REA debt is contingent upon proceeds which may be received from litigation such as this case. Furthermore, GSU contends that since the REA is an indispensable party under Rule 19(b) the suit should be dismissed if the REA cannot be joined as a plaintiff in this action. Both Cajun and the REA have opposed GSU's motion to join the REA.

## II. Is the REA a Person to be Joined if Feasible?

### A. The Requirements of Rule 19

Under Rule 19(a), any person who can properly be served and joined without depriving the court of jurisdiction should be joined if without joinder relief cannot be granted to those persons already parties. If such a person's joinder would deprive the court of jurisdiction or the person cannot be personally served, the court must then consider the four factors listed in Rule 19(b) and decide whether the action should proceed. A party should also be joined if its absence might result in impairment of its claimed interest in the subject matter of the action or in the exposure of any present party to a substantial risk of multiple litigation, so long as there is an adequate opportunity for the added party to prepare.

---

1. Complaint, paragraph 11 at p. 4.

If a person who should be joined if feasible under Rule 19(a) cannot be joined, the court must then decide "in equity and good conscience" under Rule 19(b) whether to proceed without that party or to dismiss. Obviously, if the court dismisses the action, the court is making an implied determination that the absent party is indispensable.[2]

There are four factors which the court must consider and weigh under Rule 19(b) when determining whether to proceed with the case or to dismiss the case:

(1) The prejudicial effect, on both present and absent parties, of a judgment rendered in the absence of the party who could not be joined.

(2) The extent to which any such prejudice could be lessened or avoided by measures such as protective provisions in the judgment and shaping of the relief granted.

(3) The adequacy of any judgment rendered in the party's absence.

(4) The adequacy of any remedy the plaintiff might have if the action is dismissed on the basis of nonjoinder.

In determining what prejudicial effect a party may sustain, the Court is required to consider the quality of the action, the probability of injury, the option of the person in question to intervene to protect his interests, and the substantial risk of multiple litigation.[3]

### B. Sovereign immunity

■ The REA contends that it cannot be forced to join this suit because it has not waived its sovereign immunity. In response to the REA argument, GSU[4] contends that the REA has waived its sovereign immunity pursuant to 28 U.S.C. § 2410. Section 2410(a) provides:

Under the conditions prescribed in this section and section 1444 of this title for the protection of the United States, the United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction over the subject matter—

(1) to quiet title to,

(2) to foreclose a mortgage or other lien upon,

(3) to partition,

(4) to condemn, or

(5) of interpleader or in the nature of interpleader with respect to,

real or personal property on which the United States has or claims a mortgage or other lien.

GSU argues that Cajun's suit is an action to quiet title. GSU defines an action to quiet title as "an action to determine the relative interest and priorities of those who claim an interest in property."[5] However, the parties in the case at hand admit that the government's lien is valid and would outrank GSU's interest in the plant if the JOA was rescinded.[6]

The recordation of the REA and REA guarantied liens will outrank any rescission which may be granted by the court. Cajun mortgaged its property pursuant to the rights granted under the JOA. The "relative interest and priorities" of the REA and GSU are not in dispute. Therefore, the Court concludes that this is not an action to quiet title.

■ Even assuming § 2410 is applicable to the facts of this case, there is no case or

---

**2.** 7 Wright and Miller § 1604, 1607; *Acton Co. v. Bachman Foods, Inc.,* 668 F.2d 76 (1st Cir.1982).

**3.** *Provident Tradesmen's Bank & Trust Company v. Patterson,* 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968); *Morrison v. New Orleans Pub. Serv. Inc.,* 415 F.2d 419 (5th Cir.1969).

**4.** Cajun has not taken a position in its memorandum on whether the REA has waived its sovereign immunity.

**5.** GSU's post-argument memorandum in support of motion under Fed.R.Civ.P. Rule 12(b)(7) to bring in Rural Electrification Administration as plaintiff at pp. 4–5, citing *United States v. Morrison,* 247 F.2d 285 (5th Cir.1957) and *Estate of Johnson v. United States,* 836 F.2d 940 (5th Cir. 1988).

**6.** Louisiana Civil Code article 2035 states:

Nullity of a contract does not impair the rights acquired through an onerous contract by a third party in good faith.

If the contract involves immovable property, the principles of recordation apply.

controversy under § 2410. GSU's claims under § 2410 are *contingent* upon a number of factors and assumptions: (1) Cajun has not yet proved any of its claims; and, (2) even if Cajun proves its claims, the Court is not limited to ordering a rescission of the JOA under article 2033 of the Louisiana Civil Code; (3) GSU assumes that the Court will not condition repayment of funds from GSU to Cajun upon the release of REA and the REA guaranteed liens; (4) GSU assumes that Cajun will not use the proceeds from this suit to repay the REA loans and, (5) GSU assumes that the REA will foreclose on the mortgage even if Cajun wins, the contract is rescinded, and Cajun is awarded damages from GSU. It is clear that GSU's concerns are contingent on a number of future events that are mere possibilities and do not satisfy the case and controversy requirements of the Constitution.[7] Furthermore, a case and controversy involving the REA may never arise in the context of this litigation because of the REA's agreement to release the REA and REA guaranteed mortgages if the court rescinds the JOA and orders GSU to give back all the money invested by Cajun.[8]

### C. Other Rule 19(a) considerations

■ Even if the joinder of the REA was not precluded by sovereign immunity, the requirements of Rule 19(a) have still not been satisfied. Each of the applicable subsections of Rule 19(a) will be discussed separately.

Rule 19(a)(1) provides for joinder "if in the person's absence complete relief cannot be accorded among the parties." GSU argues that even if Cajun wins this suit and is granted a rescission of the JOA, the REA cannot be compelled to release the mortgages unless it is a party to this action. However, the Court's remedies are

not limited to rescission under article 2033 of the Louisiana Civil Code.[9] Article 2033 provides that if "it is impossible or impracticable to make restoration in kind, it may be made through an award of damages." Thus, the Court has much flexibility in fashioning any such award through damages, restoration in kind, or a combination of both. Furthermore, the Court has the authority to condition any judgment upon the application of the proceeds to REA debt and the release of the REA mortgages.

Joinder is permissible under Rule 19(a)(2)(i) when a person "claims an interest relating to the subject matter of the action and is so situated that the disposition of the action in the person's absence may [ ] as a practical matter impair or impede the person's ability to protect that interest." In this case, the REA has *voluntarily chosen* not to join as a party to this action. GSU has made no showing and the record is devoid of any facts which would indicate that the REA's interest would, *as a practical matter*, be impaired or impeded.

GSU asserts that if Cajun wins the suit, GSU will be "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations" because of the REA's mortgage interest. Thus, GSU contends joinder is warranted under Rule 19(a)(2)(ii). Cajun's investment in the plant under the JOA is approximately $1.6 billion while Cajun's total debt to the REA is $4.6 billion. The REA mortgages on the plant secure the entire $4.6 billion debt. Even if the Court grants the rescission of the JOA and Cajun applies $1.6 billion to the REA debt, the mortgages cannot be extinguished by their own terms. GSU claims that after restoring Cajun to its position before the JOA, the REA will then foreclose on the mortgages. The Court finds

---

7. See *Preiser v. Newkirk,* 422 U.S. 395, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975); *Golden v. Zwickler,* 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969); *Brown & Root, Inc. v. Big Rock Corp.,* 383 F.2d 662 (5th Cir.1967); and *American Fidelity & Cas. Co. v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co.,* 280 F.2d 453 (5th Cir.1960).

8. See stipulation filed by REA.

9. Louisiana Civil Code article 2033 states:

An absolutely null contract, or a relatively null contract that has been declared null by the court, is deemed never to have existed. The parties must be restored the situation that existed before the contract was made. If it is impossible or impracticable to make restoration in kind, it may be made through an award of damages.

no merit in GSU's assumptions and speculations. As noted earlier, the Court is prepared to fashion a remedy which will not expose GSU to any multiple liability.

### III. Is the REA an Indispensable Party Within the Meaning of Rule 19(b)?

 Rule 19(b) provides:

If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent party being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudiced can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

GSU argues that even if the REA cannot be joined because of sovereign immunity, the court should still find that the REA is an indispensable party and dismiss this suit. The Court finds that the REA is not an indispensable party under the facts of this case. As discussed earlier, the REA's interest is adequately protected by the mortgages regardless of the outcome of this suit. There is no evidence that Cajun or GSU will be prejudiced by a judgment rendered in REA's absence. The Court believes it can fashion a judgment which will adequately protect the rights of all parties. Moreover, as long as the REA does not waive its sovereign immunity, no court—state or federal—would be able to hear this case. As the parties know, the provisions of 12(b)(7) cannot be waived.[10] Should the evidence develop in the future course of this case that the presence of the REA is required to protect the rights of the parties to this suit, or to protect the intent of REA, an appropriate order can be rendered during the pretrial, or trial stage of these proceedings or even at the time the Court is deciding an appropriate remedy in this case.

### IV. Conclusion

Therefore, Gulf States Utilities Company, Inc.'s motion under Rule 12(b)(7) of the Federal Rules of Civil Procedure to bring in Rural Electrification Administration as an additional plaintiff is DENIED without prejudice.