**R.A. CALDWELL, Appellee,**

v.

**GURLEY REFINING COMPANY, Appellant.**

**No. 84–1030.**

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1984.

Decided Feb. 25, 1985.

Rehearing Denied March 26, 1985.

---

**10.** 7 C.F.R. § 47.53 (1983).

See also, D.C., 533 F.Supp. 252.

David A. Orsini, Little Rock, Ark., for appellant.

Elton A. Rieves, III, West Memphis, Ark., for appellee.

Before BRIGHT and McMILLIAN, Circuit Judges, and LIMBAUGH,* District Judge.

LIMBAUGH, District Judge.

On July 15, 1970, R.A. Caldwell leased certain land to Gurley Refining Company to be used by Gurley as a waste material dumping site. Thereafter, Gurley dumped oil sludge and waste materials from its West Memphis plant into a pit on the leased ground. Although the lease was to run ten years, Gurley terminated it in 1976 representing to Caldwell that the pit had been properly sealed. The pit had not been sealed adequately as hazardous substances leaked from the pit into the St. Francois and Mississippi Rivers.

The Environmental Protection Agency (EPA), the United States Coast Guard and certain Arkansas state agencies informed both Caldwell and Gurley that they would be held responsible for all costs incurred in cleaning the spill.

This action was brought by Caldwell against Gurley Refining Company invoking the provisions of the Declaratory Judgment Act, 28 U.S.C. § 2201. Caldwell requested the District Court to determine his rights and obligations and those of Gurley under the lease and in particular Caldwell's right of indemnity against Gurley, if any, resulting from liability to the EPA for cleanup operations.

At trial, Caldwell claimed that as the result of Gurley's operations under the lease and in violation of its terms, widespread pollution of the navigable streams of the United States and the State of Arkansas had occurred and that he is subjected to the claims of E.P.A. for past and future cleanup operations of the lease site. Gurley contended that the lease was terminated by mutual agreement on February 12, 1976 and the storage pit area became Caldwell's responsibility after that date.

---

\* The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern and Western District of Missouri, sitting by designation.

The matter was tried to a jury with interrogatories as to the factual issues being submitted to which the jury answered. On the basis of the jury findings, the court entered a declaratory judgment in favor of Caldwell holding that the lease of July 14, 1970 remained in effect for its full term of ten years and that Gurley is responsible during that term for all pollution occurring to the navigable waterways of the United States and the State of Arkansas and their tributaries from operations of Gurley at the lease site. The court ruled further that if Caldwell "is required to pay any claim or judgment to the state or federal agencies for pollution occurring at the site during the ten year period of the lease", Caldwell is entitled to full indemnity from Gurley.

We affirm the judgment of the trial court.

On this appeal, Gurley suggests there are four areas in which the trial court erred. The first is that the court had no jurisdiction for purposes of declaratory relief with regard to the oil removal since no "actual controversy" existed at the time of the court's action. The second is that Gurley should not be responsible for any cleanup operations as there is no residual liability of a lessee after the lease has terminated. In the third instance, Gurley asserts the credible evidence is that the lease terminated in 1976 and the court could not assess responsibility to it after that date. Finally, Gurley maintains the court erred in giving jury instructions six, seven and eight and interrogatories one through five.

## I.

### Jurisdiction

Gurley maintains that as neither federal nor state authorities have asserted a claim for recovery of the waste cleanup costs against either party, there is no "actual controversy" between the parties. If no actual controversy exists, the court has no jurisdiction to order declaratory relief. (The jurisdictional issue was raised for the first time in post-trial motions).

The law provides that:

"In a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration ...". 28 U.S.C. § 2201.

The right to a jury trial in declaratory judgment actions is authorized by Rule 57, Federal Rules of Civil Procedure. The rule also provides that "the existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate."

The jury found from a preponderance of the evidence that Gurley discharged oil or a hazardous substance into the navigable waters of the United States in violation of state and federal statutes as the result of its operations on land leased from Caldwell on July 14, 1970, (the lease was to begin July 15, 1970); that Gurley breached the lease with Caldwell by failing to comply with conditions imposed by the Arkansas Department of Pollution Control and Ecology in its letter of July 17, 1970; that the lease was terminated by agreement of the parties on February 12, 1976, but that at such time Gurley misrepresented to Caldwell it had satisfied the Arkansas Pollution Control Commission as to measures it had taken to prevent pollution and Caldwell relied on this misrepresentation in agreeing to terminate the lease in 1976. There was ample evidence to support these findings and the trial court's subsequent judgment that if Caldwell is required to pay any claim or judgment to the state or federal agencies for pollution occurring at the site during the ten-year period of the lease, Caldwell is entitled to full indemnity from Gurley.

The evidence reveals that in 1969, Gurley had been seeking ways in which it might dispose of its refinery waste matter. Conferences were had with the Arkansas Pollution Control Commission which led to the issuance of a Commission order on February 1, 1970 prohibiting Gurley from discharging its waste on the banks of the Mississippi River or into any of the waters of the State or in any other location where

the wastes are likely to cause pollution. Gurley was further ordered to submit an application to the Commission for a permit for a system adequate to dispose of its wastes.

On July 15, 1970, Gurley entered into a ten-year lease with Caldwell to use Caldwell's land as a dumping pit for Gurley's waste. Thereafter, Gurley's waste, which was toxic, was dumped in a pit on Caldwell's land. The Arkansas Commission issued Gurley a permit on September 25, 1970 to operate the waste disposal system at the Caldwell location.

After usage for almost five years, Gurley sought to curtail its operation of the Caldwell land and notified the Arkansas Pollution Control Board that it would cease dumping there on or before September 30, 1975. At this stage Gurley had engineered a disposal system for its waste at an on-plant site in West Memphis, Arkansas.

Authority to cease usage of the Caldwell land for disposal purposes was given Gurley on December 31, 1975, provided he follow certain procedures designed by Irby Seay, Gurley's consulting engineer. This approval admonished Gurley that it did not relieve it "of responsibility in the event that pollution problems occur from these pits in the future."

Gurley did eliminate its dumping on Caldwell's land and paid him an agreed sum of $4,000 as a balance due on the lease. Gurley told Caldwell all requirements of the state and federal environmental protection agencies had been met which induced Caldwell to accept the final payment. Actually, Gurley did not fulfill these requirements and a discharge occurred in 1978 and 1979.

EPA engineers had determined by May 30, 1978 that the pit, seven to ten acres in size, had overflowed into a 15-mile bayou and "that the pit will be a real problem for many years to come if it is allowed to remain as it is now." On July 12, 1978 the EPA notified Caldwell and Gurley by telegram, which was followed later by letter, that an oil pollution incident had occurred at the abandoned Caldwell pit for which each party was considered responsible.

The parties were admonished that if they did not remove the pollutant by July 17, 1978, the government would, and "you (Caldwell and Gurley) will then be held responsible for any actual costs incurred by the federal government under limitation set forth in Sec. 311(c) of the Clean Water Act."

Thereafter, Gurley attempted unsuccessfully to remedy the problem and Caldwell was notified by EPA on July 19, 1978 that Gurley's efforts were unsatisfactory and the government would remove the pollutants.

On December 6, 1982, the United States Coast Guard notified Caldwell that harmful oil from the pit was discharged from May 24, 1978 to April 4, 1979 and a hearing was to be held as to "civil penalty proceedings." A preliminary determination was made by the Coast Guard that Caldwell's penalty would be $5,000; however, at the time of trial final assessments had not been made. The Coast Guard told Caldwell that when final penalties were determined, "recovery of these costs will be the subject of a separate action."

Caldwell filed this declaratory judgment action in 1979 but the case was not tried until October 3, 1983.

 The Court finds that this brief recitation of the facts gives rise to proper jurisdiction under the Declaratory Judgment Act. 28 U.S.C. § 2201. In determining whether there is an "actual controversy" between Caldwell and Gurley within the meaning of 28 U.S.C. § 2201, the test is whether "there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal and Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941); *Lake Carriers' Assn. v. MacMullan*, 406 U.S. 498, 506, 92 S.Ct. 1749, 1755, 32 L.Ed.2d 257 (1972). The controversy must be definite and concrete touching the legal relations of parties having adverse legal interests. The questions presenting a contro-

versy must not be abstract but must define issues which are concrete and specific. *Cass Cty. v. United States,* 570 F.2d 737, 740 (8th Cir.1978). A live dispute must exist between the parties at the time of the court's hearing. *Golden v. Zwickler,* 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969).

■ In the instant case, there was a live dispute between Caldwell and Gurley at the time of filing suit in 1979 which blossomed by the time of trial on October 3, 1983. EPA had notified both parties in the summer of 1978 that there was an oil spill which one or both would be accountable for. The government cleaned up the spill after having told the parties they would be responsible for the costs incurred. Prior to this time, Caldwell had agreed to an early termination of its lease with Gurley on the misrepresentation that the pit had been properly sealed by Gurley in compliance with state and federal standards. After suit was filed, and before trial, the Coast Guard notified the parties it would hold a hearing to determine the actual penalties or costs involved in the clean-up and these would be assessed against one or both parties. The estimated penalty was $5,000 and the hearing was not completed at the time of this trial.

An analogous situation is presented in those cases where government representatives are threatening enforcement of their rules and challenges are made as to the government's authority. In such cases, a plaintiff need not always await the actual commencement of enforcement proceedings to challenge the authority under which those proceedings would be brought. However, for such an action to present a justiciable controversy, the threat of enforcement must have immediate coercive consequences of some sort upon the plaintiff. *Nuclear Engineering Co. v. Scott,* 660 F.2d 241, 252 (7th Cir.1981); *Lake Carriers' Assn. v. MacMullan, supra.*

In *Lake Carriers,* plaintiffs sought a declaration that a Michigan statute regulating sewage discharge impinged on their federal rights. At the time the action was commenced, the state officials had yet to seek compliance with the statute by way of an enforcement proceeding. As state officials were actively employing the threat of future enforcement to obtain current compliance with certain provisions of the statute, the court found the controversy to be sufficiently real and immediate. *Id.* 406 U.S. at 507–08, 92 S.Ct. at 1755–56.

Here, EPA notified the parties that either or both would be required to pay the government for its cost in clearing up a spill occasioned by the use by Gurley of Caldwell's land. Later, the Coast Guard notified them that the preliminary estimate of a penalty would be $5,000.00 and at the time of trial, hearings were in progress to determine the actual penalty. These events certainly created an actual controversy between the parties which was real and immediate.

■ Gurley maintains, nevertheless, that jurisdiction still is not present as the federal government is barred by limitation from bringing any action against the parties to assess or collect the clean-up costs as a penalty. If the government has no legal standing to maintain suit against both parties, obviously, there could be no controversy. The government has two distinct causes of action against Caldwell and Gurley under the Clean Water Act. The first is to recover removal costs pursuant to 33 U.S.C. § 1321(f)(2). The second is to assess a civil penalty pursuant to 33 U.S.C. § 1321(b)(6)(B).

An exception to the concept of sovereign immunity being vested in the United States is 28 U.S.C. § 2415. Subsection (a) of § 2415 sets a six-year limitation period for the government to claim money damages by suit when the claim is founded "upon any contract express or implied in law or fact." Subsection (b) sets a three-year limitation period when the government's claim is founded in tort.

Gurley maintains that any action the government would have against it or Caldwell is founded in tort, i.e., the wrongful discharge into the inland waterway sys-

tems. The government's cause of action accrues on completion of the oil removal operation. *United States v. Barge Shamrock*, 635 F.2d 1108, 1111 (4th Cir.1980). The record reveals that clean-up operations began on July 19, 1978 but is silent as to when the operations were completed. We assume soon after July 19, 1978. Thus, as to that spill, if the three-year statute of limitations applies suit would need to have been instituted by the United States against Gurley or Caldwell no later than July 19, 1981 or shortly thereafter. At trial on October 3, 1983, no evidence was introduced to show the United States had brought any action against Gurley or Caldwell. Gurley reasons therefore, that as the government is precluded from recovery, the Court has no jurisdiction to determine that Gurley must pay Caldwell any sum he is obligated to pay the United States arising from the spill.

Caldwell counters by maintaining that any action the government has against him or Gurley is quasi-contractual as the clean-up benefits the parties and the public. Thus, the six-year limitation period would govern and end on or about July 19, 1984 after the case was tried and the record made. Caldwell also suggests the time could be extended further as the evidence showed the spills occurred up to April 4, 1979. There is no evidence in the record to show the government eradicated any spills occurring up to April 4, 1979 except the clean-up which began July 19, 1978.

Only two cases are reported which consider whether government removal cost suits are founded in tort or contract. In *United States v. C & R Trucking Co.*, 537 F.Supp. 1080 (N.D.Va.1982), the Court held the contract theory controlled and applied the six-year limitation period. A tort theory was found appropriate in *United States v. P/B STCO 213*, 569 F.Supp. 743 (S.D. Tex.1983) and the three-year limitation period was used.

The additional claim, which the government may assert against Gurley and Caldwell is for a civil penalty. An action, suit or proceeding for the enforcement of a civil penalty must be commenced within five years from the date when the claim first accrued or it is barred. 28 U.S.C. § 2462, *United States v. C & R Trucking Co., supra.* On December 6, 1982, Caldwell was notified by the Coast Guard of the hearing to determine penalties that might be assessed resulting from the clean-up operations which began on July 19, 1978. These Coast Guard proceedings were ongoing at the time of trial of the instant case.

It is not the function of the Court on this appeal to determine if the United States will prevail in a suit against either or both of the parties in collecting clean-up costs or assessing a civil penalty. Rather, it is sufficient to outline the niceties of the facts to establish that the United States might prevail in either of their claims against the parties here. On suit by the government, a trial court may determine either the tort or the contract theory applies. The fact that a trial court could apply the contract rationale in a clean-up cost suit against Caldwell and Gurley brings the six-year limitation period into play. Such a suit would not have been barred until well after this case was tried. And, too, a trial court could find that the Coast Guard "proceedings" had already commenced substantially within the five-year limitation period which was applicable to a civil penalty determination. Accordingly, we hold that limitation periods applicable to government claims for clean-up costs and civil penalties did not divest the trial court of jurisdiction in this case.

## II.

### *Residual liability of a lessee after a lease has terminated*

Gurley next contends it should not have been required to indemnify Caldwell for sums he must pay to the government occasioned by pollution occurring at the lease site. The first reason for the assertion of Gurley as a former lessee is that it is not residually liable for a dangerous condition existing at the time the property was surrendered to Caldwell when the lease terminated. The exception to this

rule is that liability continues after the lease terminates if the dangerous condition was created by the former lessee and the lease was prematurely terminated on the premise that the dangerous condition had been rendered safe. There was ample evidence on which the jury could have based its finding that Gurley misrepresented to Caldwell that it had taken approved measures to prevent pollutants escaping from the leased land.

■ Even so, Gurley maintains that the Superfund Act, 42 U.S.C. § 9601 et seq., which governs liability for pollution clean-up cannot be applied retroactively. The Superfund Act became effective in December of 1980, five months after the lease expired by its own terms. Yet the trial courts judgment is not retroactive in fact. A retroactive statute is one which "creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *Sturges v. Carter,* 114 U.S. 511, 519, 5 S.Ct. 1014, 1018, 29 L.Ed. 240 (1885); *United States v. Solvents Recovery Serv., etc.,* 496 F.Supp. 1127, 1141 (D.Conn.1980). Although the Superfund Act, as one of its purposes, authorizes the government to collect pollution clean-up costs from the pollutees and a landowner, it does not impose new obligations on a landowner and former tenant. If the government or any other person or entity is damaged by Gurley's wrongdoings while a tenant of Caldwell, the latter is not devoid of a remedy against Gurley. The Superfund Act therefore, is not utilized in the retroactive context as set out in the judgment below.

There is no need to remand the case for further proceedings as to the degree of responsibility of Gurley and Caldwell as urged by Gurley. As previously detailed, the jury had sufficient evidence on which to base its finding that Gurley was entirely responsible for the pollution.

## III.

### *Extent of the lease term*

■ The lease between Caldwell and Gurley began July 15, 1970 and was to end ten years later. It was terminated, in fact, on or about February 12, 1976. Gurley insists, therefore, the lower court erred in requiring it to indemnify Caldwell for pollution occurring through July 15, 1980.

The jury found that when the lease was surrendered on February 12, 1976, Gurley misrepresented to Caldwell it had satisfied the Arkansas Pollution Control Commission as to measures it had taken to prevent pollution and that Caldwell relied on this misrepresentation in agreeing to terminate the lease. In effect, the jury concluded that but for the misrepresentation, Caldwell would not have terminated the lease. As there was substantial evidence to support this finding and the court's judgment thereon, it will not be overturned. *Alabama Great Southern R. Co. v. Chicago and N.W. Ry. Co.,* 493 F.2d 979, 983 (8th Cir.1974); *Leathers v. United States,* 471 F.2d 856, 858 (8th Cir.1972), certiorari denied 93 S.Ct. 2754, 412 U.S. 932, 37 L.Ed.2d 161.

## IV.

### *Instructions*

■ Gurley argues finally that the trial court erred in the giving of Instructions, six, seven and eight and in the submission to the jury of interrogatories one through five.

Instruction six states that every person using ordinary care has a right to assume, until the contrary is or reasonably should be apparent, that every other person will obey the law. Instruction seven quotes 33 U.S.C. § 1321(b)(3) "the discharge of oil or hazardous substances into or upon the navigable waters of the United States is prohibited." Whether the evidence has proven that the parties have violated this provision of the Act is for you to determine.

Instruction eight is similar to instruction seven except it quotes the provisions of Section 47–801(J), Ark.Stat. Annotated, which also states it is unlawful to pollute waters in Arkansas.

The Court has examined all instructions given to the jury including the ones complained of and finds that they correctly stated the law, were fair and that no prejudicial error resulted in their submission. *Leathers v. United States,* supra at 863. There was also no prejudicial error in the giving of interrogatories one through five. Much of Gurley's complaints about the interrogatories have been discussed in the previous assignments of error. There was substantial evidence to support the interrogatories and they were properly submitted to and answered by the jury. *Leathers v. United States,* supra at 863.

Having considered all assignments of error raised by Gurley, we conclude the judgment should be affirmed.