**PRINCIPAL MUTUAL LIFE INSURANCE COMPANY f/k/a Bankers Life Company, Plaintiff,**

v.

**WESTERN RESOURCES, INC. f/k/a Kansas Power and Light Company, Defendant.**

Civil Action No. 96–2506–GTV.

United States District Court, D. Kansas.

April 30, 1997.

W. Joseph Hatley, Lathrop & Gage L.C., Overland Park, KS, for plaintiff.

Matthew R. Hale, Troy H. Ellis, Polsinelli, White, Vardeman & Shalton, Overland Park, KS, Russell B. Selman, Ted S. Helwig, Laura A. O'Connell, Katten, Muchin & Zavis, Chicago, IL, for defendant.

### MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

Plaintiff brings this action seeking a declaratory judgment that it is exempt from liability under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.,* for environmental contamination on a parcel of land in Hutchinson, Kansas. The case is pursuant to Fed.R.Civ.P. 12(b)(1).

For the reasons set forth below, the motion is granted.

## I. Background [1]

Plaintiff and defendant are parties to a lease agreement covering a two-acre parcel of property in Hutchinson, Kansas. From approximately 1885 through 1918, the property had been the site of a manufactured gas plant. Defendant purchased the property in 1935. In August 1961, through a financing mechanism often referred to as a "sale/lease-back" transaction, plaintiff bought the property from defendant and, simultaneously, leased the property back to defendant under a lease agreement.

In the early 1990s, the Kansas Department of Health and Environment ("KDHE") began inspecting the land for evidence of environmental contamination. Shortly thereafter, defendant entered into a consent decree with the KDHE in which it agreed to initiate a remedial investigation and feasibility study of the property. As part of the decree, the KDHE also ordered defendant to provide the agency with the names of all parties potentially responsible for remediation of the land. On March 31, 1994, defendant notified plaintiff that, as the record owner of the property, plaintiff would be identified to the KDHE as a potentially responsible party ("PRP"). The KDHE officially informed plaintiff of its PRP status in a December 20, 1995 correspondence.

At the beginning of 1995, defendant contacted plaintiff and offered to purchase the Hutchinson property. During the course of those discussions, defendant speculated on the possible cost of cleaning up the site and plaintiff's potential liability. Plaintiff later rejected the proposed sale, but did request that the parties meet in order to discuss cleanup goals.

On January 5, 1996, defendant wrote to the KDHE informing the department that it had been talking with other PRPs in an attempt to obtain their assistance in remediating the site. Twelve days later, defendant invited plaintiff to participate in a meeting to discuss the status of the Hutchinson property. Defendant insists, and plaintiff does not dispute, that the invitation "followed the customary courtesy among PRPs of notifying all PRPs identified by the environmental authority of a PRP meeting." (Def.'s Mot. at 3).

In March 1996, plaintiff and defendant held a telephone conference call and exchanged a series of letters in which the parties quarreled over indemnification issues under the lease agreement and plaintiff's potential liability for any cleanup costs. After the parties were unable to work out their differences, plaintiff commenced this action seeking a declaration that it is not liable for past or future costs incurred by defendant in remediating the Hutchinson property. Defendant now moves to dismiss the case on the grounds that no justiciable controversy has been presented.

## II. Discussion

Plaintiff brings this lawsuit pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. This statute provides:

> In a case of *actual controversy* within its jurisdiction, any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a) (emphasis added). The distinction between a "controversy" in the article III sense and a mere abstract question of law is often quite blurred, and it would be impossible to fashion a precise test for determining in every instance the presence of such a controversy. *Kunkel v. Continental Cas. Co.*, 866 F.2d 1269, 1274 (10th Cir.1989)(citing *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)). The basic question to be asked, however, is whether

---

1. In analyzing defendant's motion, the court has examined the documents accompanying the parties I pleadings. This procedure is appropriate inasmuch as the court enjoys wide discretion in allowing parties to reference evidence extraneous to the complaint in their attacks on the court's subject matter jurisdiction. *See Holt v. United States,* 46 F.3d 1000, 1002–03 (10th Cir.1995); *Wheeler v. Hurdman,* 825 F.2d 257, 259 n. 5 (10th Cir.1987).

there is a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co.*, 312 U.S. at 273, 61 S.Ct. at 512. The requisite controversy must be definite and concrete, admitting a specific relief through a conclusive decree, as distinguished from an opinion advising what the law would be under a hypothetical statement of facts. *ANR Pipeline Co. v. Corporation Comm'n*, 860 F.2d 1571, 1577 (10th Cir.1988)(citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937)).

Furthermore, even when an "actual controversy" exists in the constitutional sense, courts have broad discretion in deciding whether the action is appropriate for a declaratory judgment. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, ——, 115 S.Ct. 2137, 2143, 132 L.Ed.2d 214 (1995); *Alabama State Fed'n of Labor v. McAdory*, 325 U.S. 450, 462, 65 S.Ct. 1384, 1390, 89 L.Ed. 1725 (1945). "The Declaratory Judgment Act [is] an authorization, not a command. It [gives] the federal courts competence to make a declaration of rights; it [does] not impose a duty to do so." *Public Affairs Assoc., Inc. v. Rickover*, 369 U.S. 111, 112, 82 S.Ct. 580, 581–82, 7 L.Ed.2d 604 (1962). Thus, the normal principle that federal courts should adjudicate claims within their jurisdiction is subordinated in the declaratory judgment context "to considerations of practicality and wise judicial administration." *Wilton*, 515 U.S. at ——, 115 S.Ct. at 2143.

Although the Tenth Circuit has not discussed the justiciability of actions seeking a declaration of nonliability under CERCLA, a number of other circuits have. In *Certain Underwriters at Lloyd's v. St. Joe Minerals Corp.*, 90 F.3d 671 (2d Cir.1996), for example, the Environmental Protection Agency ("EPA") discovered toxic contamination at multiple locations on which the defendant conducted lead and zinc mining operations. The EPA then designated the defendant a PRP under CERCLA. Because of uncertainties over coverage and liability, defendant's excess insurers commenced a declaratory judgment action re-

questing a declaration of their legal obligations.

Although the Second Circuit primarily discussed issues of parent-subsidiary liability under CERCLA, the court also focused on the justiciability of the controversy. The court noted that at the bulk of the contaminated sites, plaintiff established only that defendant had been named as a PRP. *Id.* at 673. In addition, the extent of cleanup costs at many of the sites remained unknown. *Id.* The court concluded that no "justiciable and ripe controversy" had been presented and, therefore, dismissed the case without prejudice. *Id.* at 676.

Similarly, in *Gopher Oil Co. v. Bunker*, 84 F.3d 1047 (8th Cir.1996), the EPA, after expending more than $1.3 million to clean up hazardous substances from a Minnesota dump site, demanded reimbursement of its costs from ten PRPs, a list which included the plaintiff but not the defendant. The EPA also informed plaintiff that the agency anticipated the Department of Justice would bring a recovery action in approximately one year. The plaintiff subsequently initiated a declaratory judgment action seeking a declaration that the defendant had caused the release of toxins and was responsible for the EPA's costs under CERCLA.

The district court granted the defendant's motion to dismiss for lack of subject matter jurisdiction, concluding that plaintiff's claims were not ripe because there was no actual controversy. *Id.* at 1049–50. Specifically, the court said:

The mere possibility of being named a defendant as responsible party does not constitute the actual controversy which is required. This Court recognizes that the EPA, and the United States on its behalf, for any number of reasons, may well and yet decline to sue Gopher Oil, or they may select yet another among the ten, or others beyond those listed as potential defendants. They may also defer simply on the fact that this case is too small or any one of a number of reasons.... In the event they are to be sued, those are [sic] another issue, but this Court at this time cannot find the requisite immediacy, and in this Court's view there is little hardship to the

plaintiff in withholding the Court's consideration.

*Id.* at 1050.

The Eighth Circuit reversed the district court pointing out that while the case was pending on appeal, the government filed a cost-recovery suit against the plaintiff and four other PRPs. *Id.* The court held that the latest developments, in effect, transformed the action into a justiciable controversy. *Id.* at 1051. The court observed in dicta, however, that the district court did not have subject matter jurisdiction at the time it issued its opinion. *Id.; see also Atlanta Gas Light Co. v. Aetna Cas. and Sur. Co.,* 68 F.3d 409 (11th Cir.1995)(uncertainty of whether state or federal environmental agencies would ever require cleanups of plaintiff's property left court without subject matter jurisdiction).·

■ Likewise, in the case at bar, plaintiff merely has been named as a PRP for the contamination at the Hutchinson property. Although a remedial investigation and feasibility study is ongoing, the KDHE has not determined the source of contamination or the possible remedial actions that may be required for the site. Nor has the KDHE isolated responsible parties or initiated cost recovery actions.

Plaintiff maintains that the consent decree entered into between the KDHE and defendant is the functional equivalent of an adversarial enforcement action. The court disagrees. The CERCLA provision governing consent decrees, 42 U.S.C. § 9622(d)(1), indicates that the entry of such a decree is not an admission of liability. Moreover, the actions that the KDHE and defendant have undertaken do not indicate the presence of an actual controversy. A "PRP letter is not a final, definitive ruling with the status of law demanding immediate compliance since it does not impose any liability on [the party]." *In re Combustion Equip. Assocs., Inc.,* 838 F.2d 35, 38 (2d Cir.1988). Similarly, a remedial investigation and feasibility study does not implicate liability issues because it is merely an investigation; it does not suggest that any entity is a responsible party. *Id.; see also D'Imperio v. United States,* 575 F.Supp. 248, 251 (D.N.J.1983) (plaintiffs' designation as PRPs coupled with ongoing EPA

feasibility investigation does not create sufficiently immediate controversy to warrant declaration of nonliability).

Plaintiff further contends that its denial of any duty to indemnify defendant under the terms of the parties' lease agreement creates a justiciable controversy. Neither defendant nor the KDHE, however, has requested that plaintiff pay for any investigation or remediation of the site. The discussions between the parties do not implicate the type of definite and concrete controversy necessary to trigger the court's subject matter jurisdiction.

In support of its position that a live controversy does exist, plaintiff largely relies on *GNB Battery Technologies, Inc. v. Gould, Inc.,* 65 F.3d 615 (7th Cir.1995), and *Caldwell v. Gurley Refining Co.,* 755 F.2d 645 (8th Cir.1985). Both cases are readily distinguishable from the instant action.

In *Gould,* the purchaser of a battery business sought a declaratory judgment that, under its purchase agreement with defendant, it shared no CERCLA liability for environmental contamination occurring prior to the date of sale. Neither party raised the issue of subject matter jurisdiction. *Gould,* 65 F.3d at 619. On appeal, a divided Seventh Circuit panel, *sua sponte,* observed that jurisdiction was proper "[b]ecause, under the 'totality of the circumstances,' [the plaintiff] has alleged sufficiently that [the defendant] seeks to impose CERCLA liability on it." *Id.* at 621. Unlike the case at bar, however, the EPA, in *Gould,* had already filed enforcement actions at the time plaintiff filed its suit in the district court. *GNB Inc. v. Gould, Inc.,* No. 90–C–2413, 1994 WL 110210, at *1 (N.D.Ill. Mar.25, 1994). The threat of liability exposure, therefore, was sufficiently ripe to warrant the plaintiff's action.

*Caldwell* also is distinguishable. In that action, the plaintiff leased certain land to the defendant for use as a waste material dumping site. Upon terminating the lease, the defendant represented to the plaintiff that the pit into which the defendant had dumped oil sludge and waste materials had been sealed properly. In fact, the pit had not been sealed adequately and hazardous substances leaked into adjacent rivers. After

investigating the site, the EPA informed the parties that they both would be held responsible for the costs incurred in cleaning the spill. The plaintiff then filed a declaratory judgment action requesting that the court determine its obligations under the terms of the lease agreement.

The Eighth Circuit, addressing the jurisdiction issue that had been raised for the first time on appeal, determined that an actual controversy did exist between the parties. *Caldwell,* 755 F.2d at 648. The court noted that although the government had not calculated the total cleanup costs, it had identified the responsible parties and made a preliminary cost assessment. *Id.* at 650. Under those facts, the court found the case ripe for adjudication. *Id.* at 649–50; *see also Aetna Cas. & Sur. Co. v. General Dynamics Corp.,* 968 F.2d 707 (8th Cir.1992) (justiciable controversy existed where defendant sought indemnity from insurance carrier after having been identified as a responsible party by environmental authorities); *Riehl v. Travelers Ins. Co.,* 772 F.2d 19 (3d Cir.1985)(same).

In contrast, no enforcement action has been initiated in the instant action nor has the government determined what action, if any, should occur with regard to the property. As noted above, the KDHE simply has named plaintiff as one of a number of *potentially* responsible parties for the contamination. Although the contingent nature of interests is not fatal to a declaratory judgment action, *Allendale Mut. Ins. Co. v. Kaiser Eng'rs,* 804 F.2d 592, 594 (10th Cir.1986), the court does not find under the circumstances that the threat of liability to plaintiff is sufficiently immediate to implicate an actual controversy.

Furthermore, even if such a controversy could be said to exist, the court, in its discretion, believes that the matter is best left for another day. Entertaining this lawsuit invites the distinct possibility of piecemeal litigation. Both the parties' and the court's resources would be expended far more efficiently if the dispute is resolved in conjunction with the KDHE's (possible) cost

recovery action. *See Gopher Oil,* 84 F.3d at 1051. Sanctioning plaintiff's declaratory judgment action at this time could slow the cleanup of the Hutchinson property as the parties entrench themselves in a liability dispute. There will be ample opportunity for the parties to litigate their legal obligations once the government has identified responsible parties and assessed the scope of remediation for the site.[2]

IT IS, THEREFORE, BY THE COURT ORDERED that defendant's motion to dismiss (Doc. 3) is granted. Plaintiff's action is dismissed without prejudice.

**IT IS SO ORDERED.**

---

**2.** Based on its rulings, the court need not reach defendant's argument that 42 U.S.C. § 9613(h)