UNITED STATES FIRE INSURANCE COMPANY, a New York Insurance Company, Plaintiff–Appellant,

v.

CAULKINS INDIANTOWN CITRUS COMPANY, Caulkins Citrus Company, Ltd., Caulkins Indiantown Groves, Ltd., Caulkins Land Development, Ltd., Venture II, Caulkins Ford Motors, Inc., all d/b/a Caulkins, individually and in his official capacity as General Partner in all the Limited Partnerships and as President of the Corporation, Wayne Thomas, individually and in his corporate capacity, and Palmer Tuthill, individually and in his corporate capacity, and Hugh Cotton Insurance, Inc., a Florida corporation, Defendants–Crossclaim Plaintiffs–Appellees,

"J.L." Johns, individually and in his corporate capacity and The Travelers, a Connecticut corporation, Defendants,

Florida Farm Bureau and Travelers Indemnity Company, Crossclaim Defendants–Appellees,

The Phoenix Insurance Company, Charter Oak Fire Insurance Company, and Travelers Indemnity Company of America, Crossclaim Defendants.

UNITED STATES FIRE INSURANCE COMPANY, Plaintiff–Appellant,

v.

CAULKINS INDIANTOWN CITRUS CO., et al., Defendants–Crossclaim Plaintiffs,

The Travelers, a Connecticut corporation, Hugh Cotton Insurance, Inc., a Florida corporation, Florida Farm Bureau Mutual Insurance Company, a Florida corporation, and Florida Farm Bureau Casualty Insurance Company, a Florida corporation, Defendants–Crossclaim Plaintiffs–Appellees.

Nos. 89–3791, 89–3981.

United States Court of Appeals, Eleventh Circuit.

May 16, 1991.

---

John A. Reed, Jr., Lowndes, Dorsdick, Doster, Kantor & Reed, P.A., Dennis J.

Wall, Dennis J. Wall, P.A., Orlando, Fla., for plaintiff-appellant.

Donald O'Dell, Markel, McDonough & O'Neal, Orlando, Fla., for Hugh Cotton Ins., Inc.

Bernard H. Dempsey, Jr., Dempsey & Associates, P.A., Winter Park, Fla., for Caulkins, et al., Wayne Thomas, Palmer Tuthill and J.L. Johns.

Duncan B. Dowling, III, Rogers & Dowling, P.A., Orlando, Fla., for Travelers Ins. Co.

Gregor M. Gaebe, Gaebe, Murphy, Mullen & Antonelli, David Kleinberg, Coral Gables, Fla., for Florida Farm Bureau.

Before HATCHETT and EDMONDSON, Circuit Judges, and PECKHAM *, Senior District Judge.

PECKHAM, Senior District Judge.

Appellant United States Fire Insurance Company ("U.S. Fire") brought suit in the District Court, seeking declaratory relief and indemnification from primary insurers The Travelers and Florida Farm Bureau for insurance coverage provided by U.S. Fire, and declaratory relief regarding the Caulkins Group of defendants. The District Court dismissed all claims against the Caulkins Group. The Court also decided that U.S. Fire had no right to pursue indemnification from the primary insurers, and thus granted summary judgment in favor of The Travelers and Florida Farm Bureau, and denied U.S. Fire's motions for partial summary judgment against these other insurers. U.S. Fire appeals these rulings.

We affirm the District Court in its dismissal of the Caulkins Group for lack of federal jurisdiction, partially affirm the summary judgment rulings, and dismiss the remainder as moot.

* Honorable Robert F. Peckham, Senior U.S. District Judge for the Northern District of Califor-

## FACTS

The Caulkins Group has been insured under policies issued by appellee insurance companies, The Travelers and Florida Farm Bureau, as well as under an excess insurance policy issued by appellant U.S. Fire. The current dispute arises from two discrimination suits brought against the Caulkins Group in the United States District Court for the Southern District of Florida. *Robinson, et al. v. Caulkins Indiantown Citrus Company, et al.*, No. 83–8655–CIV (S.D.Fla.), initiated in 1983 and still pending as of the date of oral argument before our court, is based upon allegations of race discrimination. Jurisdiction was conferred pursuant to 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. § 1981, and 42 U.S.C. § 2000e, *et seq.* *Milord, et al. v. Caulkins Indiantown Citrus Company, et al.*, No. 86–8259–CIV (S.D.Fla.), filed in 1986 and settled in March of 1989, was a sex discrimination case based upon the provisions of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e, *et seq.*

In connection with the settlement of a suit brought against it by the Caulkins Group, U.S. Fire agreed in October of 1988 to pay certain defense fees and costs already incurred by the Caulkins Group with respect to *Robinson* and *Milord,* to assume the defense and pursue settlement of those underlying suits, and to indemnify the Caulkins Group "subject to the policy limits" for any settlement or judgment resulting from those actions.

Plaintiff U.S. Fire then brought suit in District Court, seeking declaratory relief on a number of questions concerning its own and the defendant insurers' obligations and coverage defenses. The Court was asked to determine which, if any, of the three insurers had a duty to defend the Caulkins Group in *Robinson* and *Milord,* and to what extent any of these insurers are obligated to pay defense costs already incurred and defense costs to be incurred in the future. In addition to this declaratory

nia, sitting by designation.

relief, plaintiff sought reimbursement from The Travelers and Florida Farm Bureau for expenses plaintiff had already incurred in defending the Caulkins Group in *Robinson* and *Milord.*

The District Court held that, since under the settlement agreement no case or controversy existed between U.S. Fire and Caulkins, federal jurisdiction was lacking, and all claims against Caulkins were dismissed. The Court also decided that U.S. Fire had agreed through settlement with Caulkins, to become its primary insurer with regard to *Robinson* and *Milord.* The Court found Florida law to mandate that such an agreement does not preserve a right to pursue indemnification from other primary insurers, unless such a right is agreed to by the primary insurers. U.S. Fire appeals these holdings.

## DISCUSSION

A.  Dismissal of Claims against Caulkins

*Standard of Review*

■ The District Court's dismissal of U.S. Fire's claims against Caulkins is reviewed *de novo. Powell v. Lennon,* 914 F.2d 1459, 1463 (11th Cir.1990). The court should deny dismissal "if the plaintiff alleges sufficient facts to support a reasonable inference that defendant can be subjected to jurisdiction of the court." *Jackam v. Hospital Corp. of America Mideast, Ltd.,* 800 F.2d 1577, 1579 (11th Cir.1986). That is, a complaint against a party must not be dismissed unless plaintiff can prove no set of facts in support of any claim which would entitle them to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

*Declaratory Judgment Act, 28 U.S.C. § 2201*

The only issue on appeal in this action as it relates to the Caulkins Group of defendants, is whether an actual controversy exists within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201 (1982), between U.S. Fire and the Caulkins Group.

■ Under the United States Constitution, the federal judicial power extends only to "cases" or "controversies". U.S. Const. art. III, § 2, cl. 1. Thus, Congress confined federal jurisdiction in employing the declaratory remedy to cases of actual controversy. The Declaratory Judgment Act provides in relevant part:

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201 (1982). For this reason, in the instant case, as in all federal cases, a threshold question in an action for declaratory relief must be whether a justiciable controversy exists. *Wendy's Int'l v. City of Birmingham,* 868 F.2d 433, 435 (11th Cir.1989); *Brown & Root, Inc. v. Big Rock Corp.,* 383 F.2d 662, 665 (5th Cir.1967).

■ Whether such a controversy exists is determined on a case-by-case basis. *Wendy's Int'l,* 868 F.2d at 435–36. However, "[t]he controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests." *Brown & Root,* 383 F.2d at 665 (citing *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937)). At an irreducible minimum, the party who invokes the court's authority under Article III must show: (1) that they personally have suffered some actual or threatened injury as a result of the alleged conduct of the defendant; (2) that the injury fairly can be traced to the challenged action; and (3) that it is likely to be redressed by a favorable decision. *Valley Forge College v. Americans United,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). In addition, the controversy must be "live" throughout the case; federal jurisdiction is not created by a previously existing dispute. *Chiles v. Thornburgh,* 865 F.2d 1197, 1202 (11th Cir.1989).

■ No such defined and active controversy can be found in the instant case. On October 12, 1988, the Caulkins Group executed a "Compromise Settlement Agree-

ment" with U.S. Fire, addressing the obligations of U.S. Fire to reimburse Caulkins for the expenses of their defense in the *Robinson* and *Milord* actions, as well as undertake and pay for the further defense and settlement of those suits. Caulkins now contends that this agreement dissolved any existing controversy, thus leaving U.S. Fire without standing to bring the Caulkins Group to federal court. Indeed, the settlement of a dispute generally renders a case moot. *Local No. 8–6, Oil, Chemical & Atomic Workers International Union v. Missouri*, 361 U.S. 363, 80 S.Ct. 391, 4 L.Ed.2d 373 (1960); *ITT Rayonier Inc. v. United States*, 651 F.2d 343, 345 (5th Cir. 1981) (court will find mootness after settlement even if parties remain at odds over the particular issue they are litigating).

We agree with the District Court, that the Compromise Settlement Agreement in the instant matter is unambiguous as a matter of law in its effect of settling all disputes regarding payment for the underlying discrimination litigation in which Caulkins was a defendant. By the terms of the settlement, U.S. Fire agreed to pay Caulkins eighty-five percent of the legal fees for the discrimination suits, up to December 12, 1988. Compromise Settlement Agreement ¶¶ 1, 2. After this date, U.S. Fire would take over Caulkins' defense in both *Milord* and *Robinson*, and be responsible for one-hundred percent of the costs of the defense. *Id.* ¶¶ 2, 3. U.S. Fire would be responsible for selecting legal counsel. *Id.* ¶ 5. In addition, U.S. Fire agreed to indemnify Caulkins, up to policy limits, for any settlements in the two cases. *Id.* ¶ 7.

The parties defined the litigation that could be pursued by the Caulkins Group, which included an action against U.S. Fire in the Florida District Court, and the suit against Hugh Cotton in state court. Most significantly, the parties expressly provided that "United States Fire Insurance Company agrees that it will not include the Caulkins Group as parties in any litigation" concerning "any of their respective rights whatsoever against any other persons or entities," including, but not limited to sub-

rogation, indemnity, contribution and reimbursement. *Id.* ¶ 12.

There are three exceptions to the general principle that settlement between parties moots any justiciable controversy. First are the instances "in which one issue in a case has become moot, but the case as a whole remains alive because other issues have not become moot. *ITT Rayonier*, 651 F.2d at 345 (citing *University of Texas v. Camenisch*, 451 U.S. 390, 396, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981)). In the case at hand, this court finds no such surviving issue between the Caulkins Group and appellant. The fact that the Caulkins Group may have some interest in the proceedings between U.S. Fire and the appellee insurers The Travelers and Florida Farm Bureau, is not enough to constitute an actual controversy between appellant and the Caulkins Group.

A second exception is presented when one party unilaterally alters its conduct to terminate the dispute. "Voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot." *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979). Here, no illegality is alleged. The third exception encompasses controversies which are "capable of repetition, yet evading review." *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). This category "is made up of cases in which the challenged action lasts for so short a time that it inevitably expires before review is possible, and there is a reasonable likelihood that the same party will be subject to the same action again." *ITT Rayonier*, 651 F.2d at 346. No such potential for repetition of the unwieldy discrimination class actions against the Caulkins Group is apparent in the instant case.

Finally, U.S. Fire claims that it did not intend the Compromise Settlement Agreement to be a complete resolution of all controversy between itself and the insured regarding payment for the defense of *Robinson* and *Milord*. However, as a

matter of law, we find that the agreement is unambiguous in its message of finality regarding U.S. Fire's role in financing the Caulkins defense in the two cases. Under Florida law, settlement agreements are governed by the law of contracts. *Unicare Health Facilities v. Emma Mort*, 553 So.2d 159 (Fla.1989). Thus, the parol evidence rule operates to exclude extrinsic evidence from contradicting the plain meaning of an unambiguous agreement, *Miller and Pool World v. Balcanoff*, 566 So.2d 1340, 1342 (Fla.App.1990), and the settlement agreement must stand for what it is—a resolution to any questions of liability between the insurer and its insured.

For these reasons, we must find that, under the terms of the Compromise Settlement Agreement, no justiciable controversy remains between U.S. Fire and the insured. Accordingly, the decision of the District Court dismissing the claims against the Caulkins Group is AFFIRMED.

### B. Indemnity Claims Against Primary Insurers

#### Standard of Review

■ In the Eleventh Circuit, an appellate court reviews a district court's summary judgment rulings using the standard provided in Fed.R.Civ.P. 56 and the jurisprudence interpreting it. *See, e.g., Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir.1988); *Kramer v. Unitas*, 831 F.2d 994, 997 (11th Cir.1987). That is, review is *de novo*.

#### Right to Indemnification

U.S. Fire's amended complaint in the District Court also sought a judicial determination of the obligations of U.S. Fire, The Travelers, and Florida Farm Bureau to defend the Caulkins Group in the *Robinson* and *Milord* actions. In addition to declaratory relief, U.S. Fire requested indemnification from the Travelers and Florida Farm Bureau for U.S. Fire's payments to the Caulkins Group under the Compromise Settlement Agreement. U.S. Fire's position was that its obligation arose out of the excess liability coverage it had extended to the Caulkins Group. The Travelers and

Florida Farm Bureau policies, U.S. Fire maintained, extended primary coverage for the *Robinson* and *Milord* actions, and it was only because of the primary insurers' refusal to provide the Caulkins Group with a defense, that U.S. Fire's participation was made necessary.

The District Court, however, found that the Compromise Settlement Agreement had converted U.S. Fire from an excess to a primary insurer of the Caulkins Group with regard to the two discrimination suits. It also found that, as a primary insurer, U.S. Fire was not entitled to indemnity from Caulkins' other primary insurers because it did not properly preserve its right to deny liability at the time it entered into the settlement. Such a right to seek indemnity from other insurers, decided the court below, could only have been preserved through an agreement between U.S. Fire and the defendant insurers regarding indemnity, contribution, or subrogation. Accordingly, the court granted summary judgment in favor of defendant insurers.

■ It is undisputed that "[t]he *Milord* and *Robinson* claims were for discriminatory employment practices allegedly committed by the Caulkins Group." U.S. Fire Reply Brief, at 14. With this in mind, we agree with the District Court that U.S. Fire cannot be indemnified, on the grounds that the primary insurance policies of The Travelers and Florida Farm Bureau did not extend to defense in discrimination actions. Thus, since only U.S. Fire's insurance policy covered discrimination litigation, even assuming for the moment that U.S. Fire acted as an excess insurer, U.S. Fire cannot be indemnified by appellee insurers in any event.

U.S. Fire's policy with the Caulkins Group provided that for:

> any occurrence not covered, as warranted, by the underlying policies ... or not covered by any other underlying insurance collectible by the insured, but covered by the terms and conditions of this policy ... the company shall
>
> (a) defend any suit against the insured alleging such injury or destruction and

seeking damages on account thereof, even if such suit is groundless, false or fraudulent ...

(c) pay all expenses incurred by the company, all costs taxed against the insured in any such suit and all interest accruing after entry of judgment ...

Policy No. 520 36 39 23 2, § II, Plaintiff's Amended Complaint, Exh. 1. Thus, U.S. Fire was responsible for defending and paying for any suit that was not covered by any primary insurer, but was included within the coverage of the U.S. Fire policy.

Included within the U.S. Fire policy is coverage for "personal injury liability," including liability for "discrimination not committed by or at the direction of the insured." *Id.* § III, ¶ 2. U.S. Fire does not dispute that its policy provides insurance coverage for the type of discrimination alleged in the *Robinson* and *Milord* actions.

U.S. Fire maintains that the racial and sexual discrimination alleged in *Robinson* and *Milord* was also covered by the primary insurance policies of both The Travelers and Florida Farm Bureau, and thus, those insurers had the primary duty to defend or pay for the defense of Caulkins in those suits. The Travelers' policy did not provide express coverage for liability stemming from discrimination lawsuits. However, the policy did provide coverage for:

all sums which the insured shall become legally obligated to pay as damages because of personal injury or advertising injury to which this insurance applies, sustained by any person or organization and arising out of the conduct of the Named Insured's business, within the policy territory, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such injury, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient ...

Policy No. 650–301E189–4–TIA, ¶ II(A), Plaintiff's Amended Complaint, Exh. 12. "Personal injury" was defined as:

injury arising out of one or more of the following offenses committed during the policy period:

.       .       .       .       .

(3) a publication or utterance
    (a) of a libel or slander or other defamatory or disparaging material, or
    (b) in violation of an individual's right of privacy;
except publications or utterances in the course of or related to advertising, broadcasting, publishing or telecasting activities conducted by or on behalf of the Named Insured ...

*Id.* ¶ II(D).

In the Florida Farm Bureau insurance policy issued to the Caulkins Group, "personal injury" liability was defined as, among other things, injury resulting from

the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy; except publications or utterances in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the named insured.

Policy No. GL 627170, ¶ 1, Plaintiff's Motion for Partial Summary Judgment, Exh. 9. In an addendum to this insurance coverage, Florida Farm Bureau explicitly provided that:

It is agreed that, except insofar as coverage is provided to the Insured in the underlying insurance, as set forth in Schedule of Underlying Insurance, this policy does not apply to liability arising out of the following offenses: ...

(4) Discrimination, humiliation and mental anguish. Attachment to policy number UM 620846 (Jan. 1, 1978), Plaintiff's Motion for Partial Summary Judgment, Exh. 10. Thus, aside from any coverage already provided by the policy, the Florida Farm Bureau policy did not apply to liability arising out of allegations of discrimination. In order for U.S. Fire to find coverage under

the Florida Farm Bureau and The Travelers' insurance policies with the Caulkins Group, therefore, discrimination would have to fit within the definition of libel, slander, or a violation of the right of privacy.

We do not find case law which includes racial and sexual discrimination pursuant to Title VII and Section 1981, within the meaning of libel or slander. Discrimination may be defined as "[a] failure to treat all persons equally where no reasonable distinction can be found between those favored and those not favored," Black's Law Dictionary 420 (5th ed. 1979). Defamatory communications, on the other hand, are communications which tend "so to harm the reputation of another as to lower in the estimation of the community or to deter third persons from associating or dealing with him." Restatement (Second) of Torts § 559 (1977); *see also, Belli v. Orlando Daily Newspapers, Inc.*, 389 F.2d 579, 582 (5th Cir.1967), *cert. denied*, 393 U.S. 825, 89 S.Ct. 88, 21 L.Ed.2d 96 (1969) ("libel per se is any publication which exposes a person to distrust, hatred, contempt, ridicule, obloquy".) While discriminatory behavior may likely constitute slander or libel, and libelous or slanderous behavior may well constitute discrimination, we cannot conclude that discrimination is merely a type of libel or slander. Since many discriminatory acts are possible without a defamatory communication being made, discrimination cannot simply be a subset of defamation. Thus, the fact that paragraph (E) of the Second Amended Complaint of the *Robinson* complaint creates a subclass of:

> All past, present and future black employees of Caulkins Groves who have been subjected to racial harassment, jokes and slander, and subjected to otherwise discriminatory conditions of employment, which created a hostile and offensive work environment ...

*Robinson*, No. 83–8655–CIV (S.D.Fla.), Second Amended Complaint at 14–15, does not convert this discrimination action into an action for slander.

Similarly, we cannot conclude that discriminatory behavior is necessarily included within the definition of violation of the right of privacy. "The cases sometimes characterized as protecting 'privacy' have in fact involved at least two different kinds of interests. One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Whalen v. Roe*, 429 U.S. 589, 598–99, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977). While discriminatory behavior may indeed influence the making of important decisions, we are not convinced that the existence of discriminatory conduct necessarily poses such a "sufficiently grievous threat" to either interest so that it must constitute a violation of the right to privacy, in addition to a violation of Title VII, and of Section 1981 of Title 42.

For the reasons discussed above, regardless of whether U.S. Fire can be classified as a "primary" or an "excess" insurer with regard to its defense of the Caulkins Group in *Robinson* or *Milord*, it has no recourse to indemnification from appellee insurers, The Travelers and Florida Farm Bureau. U.S. Fire's policy alone provided coverage for discrimination actions, and pursuant to its own policy, it was the sole insurer responsible for the defense of Caulkins in these cases. U.S. Fire is bound to the terms of the Compromise Settlement Agreement, with no subsequent contribution from appellee insurers.

## CONCLUSION

Accordingly, the summary judgment motions of The Travelers and Florida Farm Bureau are affirmed with regard to the appellee insurers' indemnification liability and U.S. Fire's sole responsibility to defend and indemnify the Caulkins Group, and dismissed as moot insofar as they address the conversion of U.S. Fire's policy from excess to primary. Appellant's motions for partial summary judgment on the issue of coverage under The Travelers and Florida Farm Bureau policies are likewise denied, and dismissed as moot on the issue of U.S. Fire's waiver of the right to indemnification from the appellee insurers.

The District Court's order dismissing U.S. Fire's claims against the Caulkins Group is affirmed, on the ground that federal jurisdiction in the matter is lacking. Appellee Caulkins' motion for attorneys' fees and costs, dated May 31, 1990, is granted, and the matter is remanded to the District Court for a determination of the amount of the award.

AFFIRMED in part and DISMISSED in part.