4 F.3d 643
 1994 A.M.C. 1514
 MARINE EQUIPMENT MANAGEMENT COMPANY; Joseph D. Cross, Appellants,
Pacific Employers Insurance Company, Plaintiff,
v.
UNITED STATES of America, The Secretary of the Army; The
United States Army Corps of Engineers, Appellees,
Canal Barge Company, Inc. Defendant.
 No. 92-3615.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 16, 1993.
Decided Sept. 10, 1993.
 
 1
 Scott T. Zander, New Orleans, LA, argued (James W. Herron, Clayton, MO, Machale A. Miller, New Orleans, LA, on the brief), for appellants.
 
 
 2
 Damon C. Miller, U.S. Dept. of Justice, Washington, DC, argued, for appellees.
 
 
 3
 Before WOLLMAN, LOKEN, Circuit Judges, and HUNTER,* Senior District Judge.
 
 
 4
 ELMO B. HUNTER, Senior District Judge.
 
 
 5
 The Marine Equipment Management Company ("MEMCO") and Joseph Cross ("Cross"), plaintiffs below, appeal from the District Court's[1] dismissal of their declaratory judgment action. The district court dismissed the complaint without prejudice based on its ruling that no justiciable dispute exists between these parties that is sufficient to satisfy the Article III "case or controversy" requirement. We affirm.
 
 
 6
 The undisputed facts of this case as stated in the district court's opinion are as follows.
 
 
 7
 On March 19, 1984, the M/V Lydia E. Campbell, a tug owned and operated by Canal Barge Company ("Canal Barge") departed from Hennepin, Illinois, en route to New Orleans, Louisiana. In tow of the M/V Lydia E. Campbell were fifteen loaded grain barges, including the RR-215B. The RR-215B was owned by Joseph Cross and operated by MEMCO under an agreement between Cross and MEMCO. On March 22, 1984, the tug and tow were located on the Mississippi River, just above St. Louis, Missouri. There the M/V Lydia E. Campbell and tow allided with the Martin Luther King Bridge as a result of a navigational error on the part of the Captain of the M/V Lydia E. Campbell.
 
 
 8
 As a result of the allision, two barges in the tow sank. One of these barges, the RR-215B, drifted downriver and sank in the vicinity of the MacArthur Street Bridge in St. Louis Harbor. Neither the United States nor plaintiffs were responsible for the sinking of the barge RR-215B.
 
 
 9
 On March 22, 1984, the United States Coast Guard sent a telegram to MEMCO requesting that MEMCO mark and commence removal of the barge RR-215B. On March 23, 1984, the Corps of Engineers requested that MEMCO notify it whether MEMCO intended to remove the barge. In early April, 1984, MEMCO informed the Coast Guard and the Corps of Engineers that no action to remove the barge was possible until the river stage fell to ten feet. On April 20, 1984, the Corps of Engineers informed MEMCO that the sunken barge was considered a navigational hazard and must be removed.
 
 
 10
 In May, 1984, a survey of the barge indicated that the highest point of the barge was thirty-nine feet below the water's surface when the St. Louis gauge was at 29 feet. The survey further indicated that the barge was either lying at a very steep angle or upside down, with the upstream side of the barge covered with sand and the downstream side five feet out of the river bed.
 
 
 11
 On June 7, 1984, the Corps of Engineers again notified MEMCO that the barge RR-215B was an obstruction and danger to navigation and must be removed. On August 1, 1984, MEMCO agreed to mark the barge and the barge was marked on August 25, 1984. On September 5, 1984, MEMCO advised the Corps of Engineers that MEMCO planned to commence removal of the barge the following day. However, a survey of the barge indicated that removal appeared impossible at that time and MEMCO so advised the Corps of Engineers on September 11, 1984. In October, 1984, MEMCO advised Canal Barge that MEMCO would make no further attempts to remove the barge RR-215B.
 
 
 12
 On January 26, 1985, the M/V Arnold Sobel grounded on the barge RR-215B, causing the tow of the M/V Arnold Sobel to break up and a barge to drift downstream, resulting in damage to third parties.[2] In March 1985, Canal Barge contracted to have the barge RR215B removed. The salvage company hired by Canal Barge, however, found that the barge was impossible to remove due to heavy silting. On June 8, 1987, MEMCO advised the Corps of Engineers that it had abandoned the barge on behalf of itself, Joseph Cross, and their underwriters. On June 22, 1987, and on July 6, 1987, MEMCO published a notice of abandonment in the Waterways Journal and in the St. Louis Post Dispatch.
 
 
 13
 On July 20, 1987, the Corps of Engineers acknowledged receipt of MEMCO's notice of abandonment but, pursuant to Corps of Engineers' regulations, refused and continues to refuse to accept MEMCO's tender of abandonment. The present exact location of the sunken barge RR-215B is unknown. The barge is believed to have sunk completely into the river bottom of the Mississippi River at some point below the MacArthur Bridge. The barge presently is not regarded as a hazard or obstruction to navigation and the Corps of Engineers has no present intention to remove, or to require any party to remove, the barge. Canal Barge has reached an agreement with plaintiffs and defendants to remove the barge if at any time in the future removal should become necessary.
 
 
 14
 Federal courts are not courts of general jurisdiction and have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto. Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (citing Marbury v. Madison, 5 U.S. (1 Cranch) 137), 2 L.Ed. 60, reh'g denied 476 U.S. 1132, 106 S.Ct. 2003, 90 L.Ed.2d 682 (1986). The case or controversy requirement of Article III applies with equal force to actions for declaratory judgment as it does to actions seeking traditional coercive relief. Foster v. Center Township of La Porte County, 798 F.2d 237, 242 (7th Cir.1986). The test to determine whether there is an actual controversy within the meaning of the Declaratory Judgment Act is whether "there is a substantial controversy between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Caldwell v. Gurley Refining Co., 755 F.2d 645 (8th Cir.1985) (citing Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941)); Lake Carriers' Assn. v. MacMullan, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972).
 
 
 15
 Because the test to determine the existence of a "substantial controversy" is imprecise, the decision of whether such controversy exists is made upon the facts on a case by case basis. Golden v. Zwickler, 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969). The controversy must be live throughout the course of the litigation and must exist at the time of the district court's hearing of the matter and not simply when the case is filed. Id.; United States Fire Insurance Co. v. Caulkins Indiantown Citrus Co., 931 F.2d 744 (11th Cir.1991).
 
 
 16
 MEMCO and Cross request a declaration that: 1) they have successfully "abandoned" the RR-215B within the meaning of the Rivers and Harbors Act, 33 U.S.C. Secs. 401-16; and 2) they may not be held liable by anyone for any future damage attributed to the sunken RR-215B. Essentially, MEMCO and Cross claim that they have successfully abandoned the submerged barge, thereby vesting title of the wreck in the United States. The result, according to MEMCO, is to shift all responsibility to the United States for any future removal costs or for claims by unknown third parties for damage caused by the sunken barge.[3]
 
 
 17
 MEMCO's complaint regarding abandonment is centered on the United States Army Corps of Engineers' ("Corps of Engineers") failure to accept its tender of abandonment. The Corps of Engineers' refusal to accept abandonment is a matter of policy embodied in the federal regulations governing its procedures when letters of abandonment are received. 33 C.F.R. Sec. 245.45(b). Based on the refused acceptance, MEMCO and Cross claim that they may, at some point in the future, again be asked by the Corps of Engineers to mark or remove the RR-215B. It is this fear of future regulatory action that MEMCO and Cross claim is the controversy sufficient to warrant the exercise of jurisdiction under 28 U.S.C. Sec. 2201.
 
 
 18
 Federal jurisdiction is not created by a previously existing dispute. Golden v. Zwickler, 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969); United States Fire Insurance Co. v. Caulkins Indiantown Citrus Co., 931 F.2d 744 (11th Cir.1991). While MEMCO and Cross were at one time asked to mark and remove their sunken barge, they face no such compulsion at this time. Furthermore, with the RR-215B having buried itself completely beneath the bed of the river and the Corps of Engineers having dismissed its counterclaim against MEMCO and Cross, the fear of future regulation is not of sufficient immediacy and reality to warrant the issuance of declaratory judgment.
 
 
 19
 To present an actual controversy sufficient to justify the exercise of jurisdiction, the threat of enforcement must have some sort of immediate coercive consequences. Caldwell v. Gurley Refining Co., 755 F.2d 645 (8th Cir.1985). In Caldwell, a live dispute existed where the parties had been notified by the Environmental Protection Agency that one or both of them would be liable for the cleanup costs associated with the leakage of toxic chemicals into the St. Francois and Mississippi Rivers. The parties, the lessor and lessee of certain riparian property, had also been notified by the Coast Guard of a hearing to determine civil penalties that could be imposed for the leakage. These threats were of sufficient immediacy and reality to justify the exercise of jurisdiction to determine whether the lessor had the right to be indemnified by its lessee for any resulting liability. MEMCO and Cross face no such immediate or real threats and, therefore, the issuance of a declaratory judgment is unwarranted.
 
 
 20
 Finally, on the issue of abandonment, courts must be alert to avoid imposition upon their jurisdiction through obtaining futile or premature interventions, especially in the field of public law. Public Service Commission of Utah, et al., v. Wycoff Company, Inc., 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952). In Wycoff, the plaintiff sought a declaration that its business affected "interstate commerce" and, therefore, the Public Service Commission of Utah should be enjoined from ever regulating its activities. Wycoff was attempting to establish the "major premise" of an exemption to be held in readiness for a future time where the Commission might attempt to regulate it. Id. at 244. The Court reasoned that for it to effectively function the administrative process cannot be transferred from the bodies in which Congress has placed it to the courts. By their request for a declaration that they have abandoned the RR-215B, MEMCO and Cross are effectively seeking the same type of relief as Wycoff did. Accordingly, as it was in Wycoff, it is improper to foreclose the potential future regulatory actions of the administrative bodies involved in this litigation.
 
 
 21
 Plaintiffs also request a declaration that it cannot be held liable to any unknown future litigants who claim to have been damaged by a resurrected RR-215B. Again, this fails to create a controversy sufficient to support jurisdiction. No such claims are currently being made. Given the barge's likely location beneath the river bed, it cannot be said that there is even a substantial probability that such claims will ever be made. In In re American Commercial Lines, Inc., 781 F.2d 114 (8th Cir.1985), a case involving a cargo owner's claim for indemnity against the owner of a sunken barge, this court held that in the absence of any claims against the cargo owner or the "substantial probability" that such claims will be made in the future, the controversy required to be present under the Declaratory Judgment Act was lacking. The future claims feared by MEMCO and Cross are at least as uncertain as the prospective claims feared in In re American, and also cannot satisfy the actual controversy requirement.
 
 
 22
 Accordingly, the District Court's dismissal of plaintiffs' complaint is affirmed.
 
 
 
 *
 The HONORABLE ELMO B. HUNTER, Senior United States District Judge for the Western District of Missouri, sitting by designation
 
 
 [1]
 The Honorable Edward L. Filippine, United States District Court Judge, Eastern District of Missouri
 
 
 [2]
 All claims arising out of the grounding of the M/V Arnold Sobel and involving parties to the instant lawsuit have been resolved
 
 
 [3]
 Because we hold that the district court correctly declined to exercise jurisdiction in this matter due to the lack of a justiciable controversy between these parties, we express no opinion on the substantive issue of the legal effect of abandonment. See Bender v. Williamsport, 475 U.S. 534, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) (where lower federal court lacked jurisdiction but ruled on merits anyway, appellate court's jurisdiction limited to correcting the error of entertaining the lawsuit)